UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL D. DARLING,

                          Plaintiff,

v.                                                     5:25-cv-0181
                                                     (AMN/TWD)

FACEBOOK (META),

                          Defendant.
_____

APPEARANCES:

MICHAEL D. DARLING
*Plaintiff, pro se*
24-B-0396
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

       The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Michael D. Darling ("Plaintiff").  Dkt. No. 1.  Plaintiff, who is currently in the custody of the New York State Department of Corrections and Community Service ("DOCCS") at Auburn Correctional Facility, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 2, 3, 6.

## II.    IFP APPLICATION

       "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).[1]

Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 6. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[2]

## III.    BACKGROUND

Plaintiff avers at the beginning of 2019, he "was made aware of a Facebook site called 'Justice for Kristine,'" created by "Megan Rizzo of Gloversville," New York.  Dkt. No. 1 at 4.[3] He alleges "Mrs. Rizzo created this site to slander Mr. Darling."  *Id*.  Plaintiff "was made aware of these posts by his wife and son's mother . . . ."  *Id*.  He "has been unable to read the posts on the site.  The prison has denied them."  *Id*.

---

[1] *See also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

[2] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[3] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

The Court takes judicial notice of the DOCCS public administrative records which indicate Michael D. Darling is in custody following a conviction for manslaughter in the first degree.  *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on May 15, 2025).[4]  Plaintiff alleges the Facebook "posts have information about Mr. Darling's criminal case."  *Id*.  Plaintiff asserts "Mrs. Rizzo stated in one message 'I just spoke to the DA and if you want info, PM me.'"  *Id*.  Plaintiff further claims he was "informed there were other comments like this."  *Id*. (emphasis omitted).

"The DA is Lorraine Diamond out of Montgomery County, N.Y."  *Id*.  Plaintiff states "Mrs. Rizzo would have been a witness in Mr. Darling's criminal case."  *Id*.  He further asserts "[c]onversations between DA Diamond and Mrs. Rizzo were often."  *Id*.  "Posts were sent to the FBI."  *Id*.

"FACEBOOK (META)" is the sole defendant listed in Plaintiff's complaint.  *See id*. at 2. Plaintiff lists five claims: (1) "violated Plaintiff's V, VI amendment," (2) "18 USCA 242 - Deprivation of rights under color of law," (3) "18 USCA 241 - Conspiracy against rights," (4) "witness tampering," and (5) "obstruction of justice."  *Id*. at 5.  With regard to relief, Plaintiff "requests all posts deleted and existing on Facebook site 'Justice for Kristine' and Megan Rizzo's Facebook site pertaining to Mr. Darling."  *Id*.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

---

[4] *See*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . ."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).[5] This short and plain statement of the claim must be "plausible on its face." *Twombly*,

---

[5] *See also* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.").

550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Even afforded a liberal construction, Plaintiff's complaint fails to state a claim, therefore, the undersigned recommends the complaint be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B).

First, "[b]ecause the United States Constitution regulates *only the Government*, *not private parties*, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *Flagg v. Yonkers Sav. & Loan*

*Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (quoting *United States v. Int'l. Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)) (emphasis added, internal quotations omitted). Here, Plaintiff has not alleged, nor provided any facts from which this Court could conclude, defendant Facebook's actions are attributable to the state. *See, e.g.*, *Hartley v. United Student Rentals*, No. 1:24-CV-925 (AMN/CFH), 2025 WL 26769, at *3 (N.D.N.Y. Jan. 3, 2025) (explaining, "a private party's actions can be considered state action in three situations: (1) the private party acts using the coercive power of the state or is controlled by the state . . . ; (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies . . . ; or (3) the state has delegated a public function to the private party . . . . The fundamental question under each situation is whether the private party's challenged actions are fairly attributable to the State.") (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)), *report and recommendation adopted*, 2025 WL 438195 (N.D.N.Y. Feb. 7, 2025). Therefore, Plaintiff's claim that Facebook violated his rights under the Fifth and Sixth Amendments must be dismissed. *See, e.g.*, *Jones v. Ellis*, No. 1:23-CV-656 (GLS/DJS), 2023 WL 6296886, at *1 (N.D.N.Y. Sept. 8, 2023) ("Because no state action is alleged on the part of Defendant, Plaintiff's constitutional claims must be dismissed."), *report and recommendation adopted*, 2023 WL 6295610 (N.D.N.Y. Sept. 27, 2023).

Next, it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) (explaining, "in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints."). It therefore follows that a private citizen cannot bring a criminal complaint. *See, e.g.*, *Velleca v. Pangburn*, No. 9:20-CV-0887 (BKS/DJS), 2020

WL 12933756, at *7 (N.D.N.Y. Sept. 2, 2020) ("To the extent that Plaintiff attempts to initiate criminal charges against [the defendant], that claim is dismissed.  It is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual.") (citations omitted); *Dunn v. Gabriel*, No. 5:23-CV-0662 (AMN/ML), 2024 WL 3649887, at *3 (N.D.N.Y. June 14, 2024) ("[T]o the extent that the Amended Complaint asserts claims pursuant to the New York Penal Law or other criminal statutes against Defendant, I recommend that they be dismissed as not cognizable.") (citations omitted), *report and recommendation adopted*, 2024 WL 3371029 (N.D.N.Y. July 11, 2024).  Accordingly, dismissal of Plaintiff's claims premised on the defendant's alleged violation of federal criminal statutes, as well as "witness tampering" and "obstruction of justice," is warranted.  *See*, *e.g.*, *Polinski v. Oneida Cnty. Sheriff*, No. 6:23-CV-0316 (DNH/ML), 2023 WL 2988753, at *3 (N.D.N.Y. Apr. 18, 2023) (recommending dismissal of the plaintiff's claims premised on the alleged violation of state and federal criminal laws, including 18 U.S.C. §§ 241, 242) (collecting cases), *report and recommendation adopted*, No. 6:23-CV-316, 2023 WL 3344060 (N.D.N.Y. May 10, 2023), *appeal dismissed*, No. 23-867, 2023 WL 8357375 (2d Cir. Oct. 12, 2023).

Finally, the undersigned notes, to the extent Plaintiff seeks to collaterally attack his criminal conviction by way of civil lawsuit, any such claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, unless and until Plaintiff can demonstrate all criminal charges have been terminated in his favor.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus . . .

."); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action

is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no

matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

proceedings)—if success in that action would necessarily demonstrate the invalidity of

confinement or its duration.").  Put another way, "[a] habeas corpus petition . . . is the

appropriate vehicle by which to seek relief from illegal confinement."  *Godley v. Onondaga*

*Cnty.*, No. 6:16-CV-1419 (DNH/TWD), 2017 WL 2805162, at *6 n.4 (citing *Ingram v. Herrick*,

475 F. App'x. 793, 794 (2d Cir. 2012)) (N.D.N.Y. Jan. 6, 2017), *report and recommendation*

*adopted*, 2017 WL 2804944 (N.D.N.Y. June 28, 2017); *see also*, *e.g.*, *Simmons v. Fitzpatrick*,

No. 5:22-CV-0757 (LEK/TWD), 2022 WL 7666973, at *3 (N.D.N.Y. July 29, 2022)

(explaining, "a civil lawsuit may not be used to collaterally attack an existing criminal

conviction.  In other words, "Plaintiff may not challenge the legality of his conviction in a

Section 1983 action; he can only obtain such relief by bringing a petition for a writ of habeas

corpus under 28 U.S.C. § 2254.") (citations omitted), *report and recommendation adopted*, 2022

WL 7508816 (N.D.N.Y. Oct. 13, 2022); *Lynch v. Cnty. of Herkimer*, No. 6:23-CV-1454

(GTS/TWD), 2024 WL 2804839, at *4 (N.D.N.Y. Feb. 14, 2024) (explaining, "to the extent

Plaintiff's claims could be construed as calling into question the validity of any conviction which

has not been reversed, expunged, declared invalid, or called into question by a relevant authority,

his claims are barred by *Heck*."), *report and recommendation adopted*, 2024 WL 2804527

(N.D.N.Y. May 31, 2024).

        In sum, Plaintiff's complaint fails to state a claim against the sole defendant, Facebook

(Meta).  However, as previously stated, before dismissing a *pro se* complaint or any part of the

complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Therefore, the undersigned recommends dismissal without prejudice and with leave to amend.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: May 27, 2025
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**   TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*
Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

• In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

[3]    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

• In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

• In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

*3 As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

5      Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.


IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.


V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).


**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 26769
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael S. HARTLEY, Plaintiff,

v.

UNITED STUDENT RENTALS, et al., Defendants.

1:24-CV-925 (AMN/CFH)
|
Signed January 3, 2025

**Attorneys and Law Firms**

Michael S. Hartley, 3 Pine Street, Oneonta, New York 13820, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Michael S. Hartley ("plaintiff") commenced this action on July 24, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 6. Plaintiff's IFP application demonstrates that he financially qualifies to proceed IFP. [1]

[1]    Plaintiff is advised that although he has been granted IFP status, like all plaintiffs receiving such status, he is still required to pay any fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review [2]

[2]    The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). However, the courts have construed this section as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n. 1 (S.D.N.Y. 2002). Thus, review of the complaint pursuant to § 1915 is warranted in this case. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under [Section 1915] when an application to proceed in forma pauperis is filed.").

### A. Legal Standards

28 U.S.C. § 1915 directs that, when a plaintiff proceeds IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Further, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Thus, when a plaintiff proceeds IFP, "it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, plaintiffs proceed pro se, the court must grant them "special solicitude," construe their submissions "liberally," and read such submissions "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted) (citing Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994)). The rationale for this is that "a pro se litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if [ ] not afforded some degree of protection." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (citing Triestman, 470 F.3d at 475).

**\*2** However, the Second Circuit has also reminded that courts "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest." Triestman, 470 F.3d at 477 (citations omitted). Further, the "special solicitude" standard does not excuse "frivolous or vexatious filings by pro se litigants," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." Id.

### B. Plaintiff's Complaint

Plaintiff filed his complaint using the Court's form complaint for violations of civil rights (non-prisoner) pursuant to 42 U.S.C. § 1983, citing the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Compl. at 3. The complaint lists as defendants: (1) Laura and Christopher Krause, realtors and owners of United Student Rental; and (2) Corrie Damulis, Esq., a lawyer for United Student Rentals. See id. at 3-4. The complaint states that on our around June 1, 2023, when plaintiff moved into an apartment, he noticed that the front door was "paper thin" and the lock was "hanging off." Id. at 4. He emailed the owner to have the door fixed but was told by an unnamed person that they "will get with [plaintiff] sooner or later." Id. A year passed without the issue being remedied, and plaintiff indicates that the apartment was vandalized at some point. Id. at 5. The complaint lists the events as occurring on or around April 2024, on 16 West Street, Apartment 3. See id. at 4. Plaintiff states that he has suffered mental and emotional distress; thus, he seeks compensatory and punitive damages against defendants in their individual and official capacity. See id. at 5. Plaintiff's civil cover sheet cites 42 U.S.C. § 1983 for a "violation of fair housing under disability." Dkt. No. 1-2.

### C. Analysis

Liberally construing plaintiff's complaint, he asserts (1) claims under 42 U.S.C. § 1983; (2) a claim under the Fair Housing Act; and (3) unspecified claims under state law; each of these claims relate to unnamed actors' failure to repair plaintiff's front door of his apartment. See generally Compl.

### 1. 42 U.S.C. § 1983

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). "Section 1983 itself creates no substantive rights[, but] provides ... only a procedure for redress for the deprivation of rights established elsewhere." Burrell v. DOCCS, 655 F. Supp. 3d 112, 124 (N.D.N.Y. 2023) (quoting Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.' " Harrison v. New York, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)).

"The traditional definition of acting under color of state law requires that the defendant ... exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (internal quotation marks and citation omitted). Private parties generally are not state actors; therefore, they are not liable under § 1983. See Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013); see also Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' ") (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)).

**\*3** However, there exist a few limited exceptions. A private party's actions can be considered state action in three situations:

(1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test");

(2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or

(3) the state has delegated a public function to the private party (the "public function" test).

Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each situation is whether the private party's challenged actions are fairly attributable to the State. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

Here, the complaint names as defendants Laura and Christopher Krause, realtors and owners of United Student Rental; and Corrie Damulis, Esq., a lawyer for United Student Rentals. See Compl. at 3-4. These defendants are private parties, not state actors, and so may not be sued under Section 1983 unless one of the above situations applies. See Rendell-Baker, 457 U.S. at 838. The complaint alleges no facts to support that, in failing to repair plaintiff's door, the two private realtors and/or their attorney: (1) used the coercive power of the state or are controlled by the state; (2) participated in joint activity with the state or otherwise shared its functions; or (3) used authority delegated to them by the state. See Fabrikant, 691 F.3d at 207. Thus, the undersigned recommends that the claims for alleged violations of plaintiff's First, Sixth, Eighth, and Fourteenth Amendment rights as alleged under Section 1983 against defendants Laura and Christopher Krause, United Student Rental, and Corrie Damulis, be dismissed. See Eggsware v. Doe, No. 1:22-cv-54 (BKS/CFH), 2022 WL 827640, at \*5 (N.D.N.Y. Feb. 7, 2022) (dismissing the plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), report and recommendation adopted 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022). [3]

[3]     The Court has provided plaintiff with copies of all unpublished cases.

### 2. Fair Housing Act

On plaintiff's civil cover sheet, he describes his claim as a "violation of fair housing under disability." Dkt. No. 1-2. Despite this vague statement, as plaintiff is entitled to "special solicitude," Triestman, 470 F.3d at 477, the undersigned assesses whether plaintiff has set forth a claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq.

The FHA prohibits discrimination in the sale, rental, and financing of dwellings due to race, color, religion, sex, or national origin. See 42 U.S.C. § 3604(a). The FHA also prohibits discrimination in the sale or rental of a dwelling because of a handicap, which is defined as "a physical or mental impairment which substantially limits one or more of such person's major life activities ...." Jenkins v. New York City Dep't of Homeless Servs., 643 F. Supp. 2d 501, 517 (S.D.N.Y. 2009) (citing 42 U.S.C. §§ 3602(h) & 3604(f)). Courts in multiple circuits have recognized that claims for discriminatory housing practices that occur after a plaintiff buys or rents housing, called "post-acquisition" claims, are cognizable under Section 3617 of the FHA. See Francis v. Kings Park Manor, Inc., 992 F.3d 67, 87-89 (2d Cir. 2021) (Lohier, J., concurring) (noting that multiple circuit courts

acknowledge that the FHA prohibits "at least some post-acquisition conduct") (collecting cases); see also 42 U.S.C. § 3617 (making it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by ... [Section] 3604 of this title [for discrimination in rental housing]."). To prevail on a § 3617 disparate-treatment claim, a plaintiff must show that: "(1) [he] is a protected individual under the FHA; (2) [he] was engaged in the exercise or enjoyment of [his] fair housing rights; (3) the defendant was motivated by discriminatory intent ...; and (4) the defendant coerced, threatened, intimidated, or interfered with the plaintiff on account of [his] protected activity under the FHA." Mohamed v. McLaurin, 390 F. Supp. 3d 520, 545-46 (D. Vt. 2019) (citing East-Miller v. Lake Cty. Highway Dep't, 421 F.3d 558, 563 (7th Cir. 2005)).

**\*4** Here, the complaint indicates that plaintiff leased Apartment 3 on 16 West Street in Oneonta, New York, but that there was a defect in the unit – a broken front door – that was not repaired between June 1, 2023, and April 2024. See Compl. at 4. The complaint states that plaintiff contacted the "owne[r]," but was told by an unnamed person that they "will get with [plaintiff] sooner or later." Id.

These allegations are insufficient to state a claim under the FHA against defendants Laura and Christopher Krause, United Student Rental, or Corrie Damulis. See Compl. at 3-4. First, the complaint does not indicate that these defendants took any action or omission regarding the door, as the complaint merely states that plaintiff contacted the "owner," and there are no facts to indicate that defendants are the owners of the apartment. See generally id. Second, although plaintiff alleges, generally, that he has mental health impairments, see id. at 5, plaintiff does not describe how his impairments limit his major life activities, and the complaint makes no connection between any act of defendants and plaintiff's impairments. See id. Without sufficient factual allegations to connect any alleged failure by defendants to make the apartment "available" by failing to fix the door because of plaintiff's disability, the undersigned cannot find that the complaint states a Fair Housing Act claim. See Ingraham v. Red Carpet Hous. Corp., No. 1:17-cv-1076 (GLS/CFH), 2017 WL 5152343, at \*4 (N.D.N.Y. Oct. 19, 2017) (finding that allegations by pro se plaintiff of improper eviction could be read "with a very liberal lens" as an attempt to state a housing discrimination claim under the FHA, but dismissing any such claim with leave to amend because the complaint failed to identify the plaintiff as a person that fits in a protected category and failed to state that "any discrimination occurred because of [the] protected categories"), report and recommendation adopted 2017 WL 5151692 (N.D.N.Y. Nov. 6, 2017); Robinson v. Soc. Serv., No. 13-cv-172 (NAM/CFH), 2013 WL 1122450, at \*3 (N.D.N.Y. Feb. 22, 2013) (when "liberally construing the [ ] complaint, it appears that [the plaintiff was attempting] to proffer a claim that she was denied housing because of her mental impairment," but dismissing this claim with leave to amend where the complaint failed to allege "any facts which identify the nature of the mental impairment, what major life activity is impaired, and the causal relationship demonstrating that any denials were due to said mental impairment"), report and recommendation adopted 2013 WL 1107638 (N.D.N.Y. Mar. 18, 2013).

### 3. State Law Torts

Plaintiff does not list any state law tort claims in his complaint, though he does state facts concerning the habitability of his apartment. See Compl. at 4. This most closely aligns with a claim for the breach of warranty of habitability under New York state law. See, e.g., Park W. Mgmt. Corp. v. Mitchell, 47 N.Y.2d 316, 325 (1979) (finding that under New York law, "[a] residential lease is now effectively deemed a sale of shelter and services by the landlord who impliedly warrants: first, that the premises are fit for human habitation; second, that the condition of the premises is in accord with the uses reasonably intended by the parties; and, third, that the tenants are not subjected to any conditions endangering or detrimental to their life, health or safety"); see also N.Y. Real Property Law § 235-b (Warranty of Habitability).

**\*5** The exact contours of any such claim is immaterial, however, as claims against a defendant relating to apartment repairs sound in state law, not federal law; thus, the Court would have no federal question jurisdiction over any such claim. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Further, the complaint indicates that plaintiff and defendants are residents of the State of New York. See Compl. at 2 (listing plaintiff's and the Krause's addresses in Oneonta, New York, and Damulis' address in Fly Creek,

New York). Given this, the Court would not have diversity jurisdiction over any state law claims. See 28 U.S.C. § 1332 (noting that federal courts have original jurisdiction over civil actions where between citizens of different states). Finally, although a federal court may address state court claims under its supplemental jurisdiction, it would do so if the claims were related to federal claims over which the Court has jurisdiction. See 28 U.S.C. § 1367(a). Here, because plaintiff has yet to demonstrate that federal jurisdiction exists, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over any such state law claim at this time. See id. at § 1367(c)(3) (noting that federal courts may decline supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction).

Thus, the undersigned recommends that any claim for a breach of the warranty of habitability, liberally construed, be dismissed for lack of subject matter jurisdiction. See Kingsley v. New York City Hous. Auth. (NYCHA), Clarence Gordon, Ashok Kulkarni, No. 16-cv-169 (KPF), 2016 WL 5939359, at *4 (S.D.N.Y. Oct. 6, 2016) (finding liberally-construed claims against the defendants for damage to apartment, including a broken front door, to sound in state law and dismissing for lack of subject matter jurisdiction); see also Ingraham, 2017 WL 5152343, at *4 (recommending that the court decline to exercise supplemental jurisdiction over potential state law claims "because plaintiffs have not yet demonstrated that federal jurisdiction exists").


### III. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). A lack of subject-matter jurisdiction is generally viewed as a substantive defect. See U.S. ex rel. Phipps v. Comprehensive Comty. Dev. Corp., 152 F. Supp. 2d 443, 455 (S.D.N.Y. 2001).

As noted above, the undersigned finds that the deficiencies with plaintiff's claims mostly lie in the absence of sufficient factual allegations. See Edwards, 388 F. Supp. 3d at 144-45. As outlined above, it is not inconceivable that plaintiff could amend to state facts to meet a post-acquisition claim under the Fair Housing Act. If properly stated, this would provide the Court with supplemental jurisdiction over any state law claims, should plaintiff wish to allege any such claims.

It is highly unlikely that plaintiff will be able to state a claim under 42 U.S.C. § 1983 given that defendants are not state actors and there is no indication that plaintiff could meet any of the tests linking their acts to state action. See Fabrikant, 691 F.3d at 207. However, given the special solicitude standard, the undersigned recommends plaintiff be granted one chance to allege facts that could meet one of the three tests outlined above. See Triestman, 470 F.3d at 477; see also Lamothe v. Steinert, No. 2:23-cv-54T (JM/CFH), 2023 WL 4490513, at *6 (D. Vt. July 12, 2023) (noting that while it was "very unlikely" that the plaintiff would be able to cure the defects in a Section 1983 claim against his landlord, given the lack of state action, granting leave to amend at least once was proper due to the plaintiff's pro se status and the special solicitude standard) (citing Branum v. Clark, 927 F.2d 698, 704-705 (2d Cir. 1991) (reminding that a court ordinarily should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated.")), report and recommendation adopted, 2024 WL 2126938 (D. Vt. May 13, 2024).

 *6 The undersigned recommends that plaintiff be granted thirty days from the date of the District Court's order on this Report Recommendation and Order to file his amended complaint. Plaintiff is advised that any amended complaint supersedes the original complaint, must plead all facts and claims on which he seeks to proceed, and may not incorporate by reference any part of the original complaint.

## IV. Conclusion

Wherefore, for the reasons set forth herein, it is hereby:

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 6) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims under 42 U.S.C. § 1983 and the liberally-construed claims under the Fair Housing Act and under state law for breach of the warranty of habitability, as against all defendants, be **DISMISSED without prejudice** and plaintiff be **GRANTED LEAVE TO AMEND** these claims, and it is further

**RECOMMENDED,** that plaintiff be granted thirty (30) days from the date of the district court's order on this report and recommendation to file his amended complaint, and it is further

**RECOMMENDED**, that if plaintiff does not file an amended complaint within this time period, the matter be closed without need for further order of the Court, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules,

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1999)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [4]

[4]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2025 WL 26769

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 438195

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Michael S. HARTLEY, Plaintiff,

v.

UNITED STUDENT RENTALS, et al., Defendants.

1:24-cv-925 (ECC/PJE)

|

Signed February 7, 2025

**Attorneys and Law Firms**

Michael S. Hartley, Plaintiff, pro se.

## MEMORANDUM-DECISION AND ORDER

Elizabeth C. Coombe, United States District Judge:

**\*1**  Plaintiff pro se Michael S. Hartley filed this action alleging, violations of Civil Rights specifically citing the First, Sixth, Eight, and Fourteenth Amendments to the United States Constitution, in violation of, 42 U.S.C. § 1983. Dkt. No. 1. This matter was referred to United States Magistrate Judge Christian F. Hummel who, on January 3, 2025, issued a Report-Recommendation recommending that the following claims be dismissed without prejudice and with opportunity to amend: (1) claims under 42 U.S.C. § 1983 and the liberally-construed claims under the Fair Housing Act and under state law for breach of the warranty of habitability. Dkt. No. 10. Magistrate Judge Hummel advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 19–20. Plaintiff did not file an objection to the Report-Recommendation.

As no objection to the Report-Recommendation has been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation, Dkt. No. 10, is **ADOPTED**; and it is further

**ORDERED** that Plaintiff's claims in the complaint, Dkt. No. 1, under 42 U.S.C. § 1983 and the liberally-construed claims under the Fair Housing Act and under state law for breach of the warranty of habitability are **DISMISSED without prejudice** and with opportunity to amend; and it is further

**ORDERED** that any amended complaint must comply with the directions in the Report-Recommendation, and if Plaintiff fails to file an amended complaint within 30 days of the date of this Order, the Clerk of the Court will close this case without further order of the Court; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

2025 WL 438195

**IT IS SO ORDERED.**


**All Citations**

Slip Copy, 2025 WL 438195

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jones v. Ellis, Not Reported in Fed. Supp. (2023)

2023 WL 6296886

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 23 of 88

2023 WL 6296886
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dayshaun JONES, Plaintiff,

v.

Matthew ELLIS, Defendant.

1:23-CV-656 (GLS/DJS)
|
Signed September 8, 2023

**Attorneys and Law Firms**

DAYSHAUN JONES, Plaintiff, Pro Se, Albany, New York 12206.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Upon initial review of Plaintiff's Complaint, this Court recommended that it be dismissed with leave to amend. Dkt. No. 7. Rather than filing objections to the Report-Recommendation, Plaintiff filed an Amended Complaint. Dkt. No. 8, Am. Compl. The District Court adopted the Report-Recommendation and referred the Amended Complaint to the undersigned for review. Dkt. No. 9.

Review of the Amended Complaint is subject to the same standard applied in this Court's initial Report-Recommendation. *See* Dkt. No. 7 at pp. 2-3. In summary, the Court is tasked with assessing whether the Amended Complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Upon review under this standard, the Court recommends dismissal of the Amended Complaint.

[1]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**A. Analysis of the Complaint**

Plaintiff has sued Defendant Matthew Ellis, who he alleges is the Chief Financial Officer at Verizon Communications. Am. Compl. at p. 6. As with the original Complaint, however, the precise nature of the Amended Complaint is unclear. Plaintiff states that he is seeking to "secure his property [and] receive equal consideration for its exchange." *Id.* The Amended Complaint, however, does not specify what property is at issue or how Defendant has interfered with Plaintiff's rights to it. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

  (1) a short and plain statement of the grounds for the court's jurisdiction ...;

  (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

  (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Jones v. Ellis, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00181-AMN-TWD   Document 9   Filed 05/27/25   Page 24 of 88

2023 WL 6296886

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Generally stated, Plaintiff's Complaint fails to meet the requirements or provide the type of sufficient notice of the facts at issue that Rule 8 requires. This warrants dismissal.

The Amended Complaint, however, does assert certain specific legal claims. Plaintiff clearly asserts one claim under the Due Process Clause of the 14th Amendment. Am. Compl. at p. 7. Liberally construed, he also asserts another under the Contract Clause. *Id.* at p. 8. [2] Neither claim may proceed here because Plaintiff has sued an individual corporate officer and there is no allegation of the state action necessary to proceed on such a claim. "[S]tate action is a necessary component of any Contracts Clause claim, and of any Fourteenth Amendment due process or takings claim." *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 111 (2d Cir. 2003) (citing cases) (internal citations omitted); *see also Colon de Mejias v. Malloy*, 353 F. Supp. 3d 162, 171 (D. Conn. 2018), *aff'd sub nom. Colon de Mejias v. Lamont*, 963 F.3d 196 (2d Cir. 2020) ("The threshold inquiry in a Contract Clause analysis is whether there exists a contractual obligation that has been impaired by state action."); *Catanzano by Catanzano v. Dowling*, 60 F.3d 113, 117 (2d Cir. 1995) (discussing state action requirement in context of 14th Amendment claim). Because no state action is alleged on the part of Defendant, Plaintiff's constitutional claims must be dismissed.

[2]   This claim references the Supreme Court's decision in *Lochner v. New York*, 198 U.S. 45 (1905) as protecting a right to contract. *Lochner*, of course, has long since been repudiated. *See Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963). The Court, out of deference to Plaintiff's pro se status, will construe this claim as having been made under the Contract Clause, contained in section 10 of Article I of the Constitution which provides that "No State shall ... pass any ... Law impairing the Obligation of Contracts."

**\*2**   Plaintiff has also identified the Federal Reserve Act as a potential basis for his action, but that claim is also subject to dismissal. Plaintiff appears to rely upon 12 U.S.C. § 504(c) [3] which provides:

Third tier

Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party (within the meaning of section 1813(u) of this title) with respect to such member bank who--

   (1) knowingly--

   (A) commits any violation described in subsection (a);

   (B) engages in any unsafe or unsound practice in conducting the affairs of such credit union; or

   (C) breaches any fiduciary duty[.]

(footnote omitted).

[3]   Plaintiff cites section 29 of the Federal Reserve Act, which is codified in Section 504.

For several reasons, this claim may not proceed. First, the statute provides for payment of civil penalties by "any member bank," 12 U.S.C. § 504, but Plaintiff has named an individual, not a banking institution, as the Defendant. Second, any penalty imposed under the statute "shall be assessed and collected" by either the Comptroller of the Currency or the Federal Reserve Board, 12 U.S.C. § 504(e), and any such penalties "shall be deposited into the Treasury." 12 U.S.C. § 504(g). As a result, Plaintiff has not established that he personally is entitled to any relief under section 504. The Court, therefore, agrees with the view that

Jones v. Ellis, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 25 of 88

2023 WL 6296886

the statute "does not create a private right of action." *Bockari v. J.P. Morgan Chase Bank*, 2016 WL 5234719, at *3 (E.D. Cal. Sept. 22, 2016), *report and recommendation adopted*, 2016 WL 10636364 (E.D. Cal. Dec. 27, 2016), *aff'd sub nom. Bockari v. JPMorgan Chase & Co.*, 695 F. App'x 309 (9th Cir. 2017).

As this Court has previously noted in this case, dismissal without providing a *pro se* Plaintiff an opportunity to amend is contrary to established circuit precedent. Dkt. No. 7 at pp. 4-5. However, "a dismissal with prejudice is generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) (citing cases). Here, Plaintiff has been provided an opportunity to amend, Dkt. No. 8, but has still failed to state cognizable claims. Given the particular nature of the pleadings in this case, "[t]here is no basis to believe that granting leave to amend [another] time would induce the plaintiff to add the kind of allegations needed to establish a facially-plausible claim when he took no steps to do so with [the] first opportunit[ies] to amend." *Driessen v. Royal Bank Int'l*, 2015 WL 1245575, at *2 (D. Conn. Mar. 18, 2015) (citing cases); *see also Jones v. Farney*, 23-CV-563 (N.D.N.Y.). Under the circumstances presented here, the Court recommends that the Amended Complaint be dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

## All Citations

Not Reported in Fed. Supp., 2023 WL 6296886

---

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jones v. Ellis, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 26 of 88

2023 WL 6295610

2023 WL 6295610
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dayshaun JONES, Plaintiff,

v.

Matthew ELLIS, Defendant.

1:23-cv-656 (GLS/DJS)
|
Signed September 27, 2023

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Dayshaun Jones, Pro Se, 265 Manning Blvd, Apt A, Albany, NY 12206.

<u>**ORDER**</u>

Gary L. Sharpe, Senior District Judge

*1  The above-captioned matter comes to this court following a Report-Recommendation and Order (R&R) by Magistrate Judge Daniel J. Stewart, duly filed September 8, 2023. (Dkt. No. 10.) Following fourteen (14) days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections [1] having been filed, and the court having reviewed the R&R for clear error, it is hereby

[1]    On September 21, 2023, plaintiff filed another amended pleading, which suffers from similar infirmities to his first two. (Dkt. No. 11.) The R&R, however, did not afford plaintiff leave to amend, nor did he seek leave of the court to do so. Accordingly, the Clerk is directed to strike that filing.

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 10) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the Clerk is directed to **STRIKE** plaintiff's second amended complaint (Dkt. No. 11); and it is further

**ORDERED** that plaintiff's amended complaint (Dkt. No. 8) is **DISMISSED** in its entirety; and it is further

**ORDERED** that the clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6295610

---

**End of Document**                                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 27 of 88

2020 WL 12933756
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul VELLECA, Plaintiff,

v.

Robert PANGBURN, Fred Ford, and Shane Biggar, Defendants.

9:20-CV-0887 (BKS/DJS)
|
Signed 09/02/2020

**Attorneys and Law Firms**

PAUL VELLECA, Plaintiff, Pro se, 20-B-0586, Wyoming Correctional Facility, P.O. Box 501, Attica, NY 14011.

**DECISION and ORDER**

BRENDA K. SANNES, United States District Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a pro se civil rights Complaint filed by plaintiff Paul Velleca ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Delaware County Correctional Facility ("Delaware County C.F."). Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at Wyoming Correctional Facility, has not paid the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[1]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, the Court grants Plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2]

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Complaint

The following facts are set forth as alleged by Plaintiff in his Complaint.

On May 5, 2020, defendant Sergeant Robert Pangburn ("Pangburn") approached Plaintiff's cell (cell 10 in B-Unit), and verbally harassed Plaintiff. Compl. at 4. Plaintiff and Pangburn "exchanged insults." *Id.*

On May 6, 2020, while Plaintiff was in his cell completing a grievance form, Pangburn and defendant Corrections Officer Fred Ford ("Ford") entered Plaintiff's cell. Compl. at 5. Pangburn had Plaintiff's previously filed grievances in his hand and stated that he "wished to discuss" the complaints. *Id.* Pangburn walked to the mirror in Plaintiff's cell and noticed a "derogatory comment [ ] inscribed about Pangburn." *Id.* Pangburn then accused Plaintiff of threatening Ford and called "Code Red Bravo" into his radio, signaling to other officers that a prisoner was acting violently. *Id.* Plaintiff voluntarily dropped onto the floor, face down,

and put his hands behind his back. Compl. at 5. While Plaintiff was in the submissive position, Pangburn and Ford began to yell, "get on the ground! Stop resisting!" *Id.* at 6.

**\*3** While Plaintiff was on the floor, one of the defendants applied a knee to the right side of his head causing contusions and broken blood vessels. [3] Compl. at 6. Defendants also sprayed a chemical agent into Plaintiff's eyes, nose, and mouth. *Id.* Defendants handcuffed Plaintiff with "maximum pressure" causing "partial numbness in Plaintiff's hands." *Id.* When Defendants lifted Plaintiff onto his feet, they "slammed" his head into a wall and "thrusted" Plaintiff into a restraint chair, while his hands were still behind his back. Compl. at 6.

[3]    Plaintiff states that because he was "face down," he could not see which Defendant was responsible for the specific acts. *See* Compl. at 6.

Defendant Sergeant Shane Biggar ("Biggar"), the grievance coordinator, arrived at the scene. Compl. at 7, 10. Biggar was aware that Pangburn planned to speak with Plaintiff about his grievances and asked Pangburn, "[w]hat happened? You came down to talk about grievances and everything went south?" *Id.* at 7.

Plaintiff was wheeled in the restraint chair into a holding cell, where he remained for an hour. Compl. at 7. Plaintiff was then wheeled, in the restraint chair, fully dressed and handcuffed, to the shower where the "chemical agent ran down Plaintiff's body burning [his] groin area." *Id.* While Plaintiff showered, Pangburn continued to verbally abuse and threaten Plaintiff. *Id.*

From the shower, Plaintiff was wheeled, still fully clothed, handcuffed, and "soaking wet" in the restraint chair, into a holding cell. Compl. at 7. While he was in the cell, Plaintiff overheard Pangburn tell other officers that he intended to harm Plaintiff because Plaintiff made disrespectful comments about Pangburn's family during their verbal altercation on May 5, 2020. *Id.* at 8. At Pangburn's direction, Ford kept Plaintiff, wet and in restraints, in the holding cell for three hours. *Id.*

On May 7, 2020, Plaintiff filed a grievance related to the incident. Compl. at 10.

Plaintiff received two Ibuprofen pills for his "partially numb hands" but was told that he could not see a doctor until May 12, 2020. Compl. at 9. On May 12, 2020 and May 19, 2020, Plaintiff saw doctors for complaints of numbness. *Id.* The doctors told Plaintiff the numbness would heal with time and offered Tylenol. *Id.* On May 24, 2010 and June 2, 2020, Plaintiff submitted sick call slips, but his requests were ignored. *Id.*

On May 17, 2020, a disciplinary hearing was held with respect to the use of force incident. Compl. at 9. At that time, Plaintiff was given the opportunity to review the Incident Report, for the first time. [4] *Id.* at 10. The report was prepared by Ford and contained a "falsified narrative." *Id.*

[4]    The Complaint lacks facts related to when the Incident Report was prepared or the substance of the report.

Construed liberally, [5] Plaintiff asserts the following: (1) Eighth Amendment excessive force claims against Pangburn and Ford; (2) Eighth Amendment failure-to-protect claim against Biggar; (3) Eighth Amendment deliberate medical indifference claims; (4) First Amendment retaliation claims against Pangburn and Ford; (5) constitutional claim related to a falsified document; and (6) conspiracy claims. *See* Compl. at 11-12. Plaintiff seeks monetary damages. *Id.* at 12. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

[5]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 30 of 88

2020 WL 12933756

only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

#### C. Nature of Action

**\*4** Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

#### A. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

### 1. Excessive Force and Failure to Intervene

The prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

Courts within the Second Circuit have held that "overly tight handcuffing can constitute excessive force." *Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008); *Milo v. City of New York*, No. 14–CV–1172, 2014 WL 5933091, at \*6 (E.D.N.Y. Nov. 14, 2014) (citing *Lemmo v. McCoy*, No. 08–CV–4264, 2011 WL 843974, at \*5 (E.D.N.Y. 2011)).

Similarly, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at \*3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 31 of 88

**\*5**  At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment claims against Pangburn and Ford survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the Eighth Amendment claim against Biggar. The Complaint lacks any allegations regarding what, if anything, Biggar witnessed, or facts suggesting that Biggar was in the vicinity of Plaintiff's cell when the use of force incident occurred. The allegation that Biggar was aware that Pangburn was going to speak with Plaintiff regarding his grievances does not suggest that Biggar was aware that the alleged assault would occur, was occurring, and had an opportunity to protect Plaintiff from harm, yet failed to do so out of deliberate indifference to Plaintiff's safety. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1970); *Rosen v. City of New York*, 667 F.Supp.2d 355, 360 (S.D.N.Y. 2009) ("In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene."); *Dean v. New York City*, No. 15-CV-8825, 2017 WL 3670036, at \*4 (S.D.N.Y. July 6, 2017) (denying as futile leave to amend to add failure-to-intervene claim against corrections official where the proposed amended complaint was "devoid of any factual allegations against P.O. Myers with respect to the failure to intervene claim, such as, for example, where P.O. Myers was located and what she was doing when P.O. Baksh pepper sprayed the plaintiff's face").

Accordingly, Plaintiff's Eighth Amendment claim against Biggar based on the alleged events that occurred on May 6, 2020, is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Deliberate Medical Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden*, 186 F.3d at 262 (with respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

**\*6**  "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

Construing the Complaint liberally, Plaintiff alleges that Defendants refused to allow him to receive medical treatment for injuries that he sustained during a physical altercation. *See* Compl. at 9. Even assuming Plaintiff suffered from a serious injury, he has not pleaded facts suggesting that he submitted any request for medical treatment to Defendants or that he told Defendants that he was in extreme pain. Plaintiff claims that he received "two ibuprofen pills and [was] told that he could not see a doctor until May 12 [th]", *see* Compl. at 9, but does not attribute any of those actions or statements to any Defendant. Plaintiff also claims that his sick call slips were ignored, but does not allege who was responsible for the sick call slips or that he submitted the sick call slips to Defendants. As presently constituted, the pleading does not plausibly allege that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety.

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 32 of 88

2020 WL 12933756

Consequently, Plaintiff's Eighth Amendment deliberate medical indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### B. First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

The filing of a grievance or lawsuit is protected speech. *See Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). With respect to the second element, the Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill*, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

**\*7** To the extent that Plaintiff relies upon his verbal dispute with Pangburn as protected conduct or speech, that claim fails. "A plaintiff may not pursue a retaliation claim against a corrections officer every time he gets into a verbal dispute with that officer." *Torrez v. Mulligan*, No. 3:17-CV-677, 2017 WL 2623165, at \*3 (D. Conn. June 16, 2017) (citing *Carl v. Griffin*, 2011 WL 723553, at \*5 (S.D.N.Y. Mar. 2, 2011)) (holding that the plaintiff was not engaged in protected conduct during a verbal confrontation reasoning that, "[t]o construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.").

However, Plaintiff also alleges that Pangburn and Ford entered his cell on May 6, 2020, with Plaintiff's grievances in hand, and began questioning Plaintiff about his complaints. Compl. at 5. The discussion allegedly lead to the assault. *Id.* At this juncture, the Court finds that Plaintiff's retaliation claims related to the use of force incident, survive sua sponte review and require a response. *See Smith v. Rosati*, No. 10–CV–1502 (DNH/DEP), 2013 WL 1500422, at \*14 (N.D.N.Y. Feb. 20, 2013) (holding that an assault by a correctional officer is sufficient to satisfy the second prong of a retaliation claim). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### C. False Report

Plaintiff claims that Ford "knowingly falsif[ied] the Incident Report in "violation of 18 U.S.C. § 1519." Compl. at 12. To the extent that Plaintiff attempts to initiate criminal charges against Ford, that claim is dismissed. It is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child*

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

Case 5:25-cv-00181-AMN-TWD     Document 9     Filed 05/27/25     Page 33 of 88

*Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4, n. 7 (N.D.N.Y. May 14, 2012) (citing *inter alia, Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Assuming that Plaintiff attempts to assert a Section 1983 claim related to the misbehavior report, it is well settled that an inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate ... violates due process ... where ... procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him ..., or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights....") (internal citations omitted) (internal citations omitted). Here, Plaintiff has not identified the hearing officer as a defendant and has not alleged facts to suggest that he was not adequately afforded a hearing related to the Incident Report.

To the extent that Plaintiff attempts to assert a retaliation claim against Ford related to the Incident Report, that claim is not sufficiently plead. Although Plaintiff engaged in protected conduct when he filed a grievance related to the use of force incident on May 7, 2020, it is not clear from the pleading that the grievance addressed Ford and, more importantly, when the Incident Report was prepared or when/how Ford became aware of the grievance. Thus, Plaintiff has failed to plead facts sufficient to satisfy the third element of a retaliation claim. Accordingly, Plaintiff's retaliation claim against Ford, based upon the Incident Report, is dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### D. Conspiracy [6]

[6] To the extent that Plaintiff attempts to initiate criminal charges against Defendants related to a conspiracy pursuant to 18 U.S.C. § 241, for the reasons set forth in Part IV©, *supra*, that claim is dismissed.

**\*8** A conspiracy claim under § 1985 has four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29, (1983)). To maintain a § 1985 conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). A claim for conspiracy under 42 U.S.C. § 1985 ("Section 1985") "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Robinson,* 508 Fed. App'x at 9 (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)).

Here, the Complaint lacks any facts suggesting that Defendants were motivated by "racial or otherwise class-based, invidious discriminatory animus." Indeed, Plaintiff alleges that Pangburn intended to violate his rights because Plaintiff made "disrespectful comments" about Pangburn's family. *See* Compl. at 8. Accordingly, the conspiracy claims, asserted pursuant to Section 1985, *see id.* at 11, are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

However, in light of Plaintiff's pro se status and construing the pleading liberally, the Court finds that Plaintiff has sufficiently alleged a conspiracy claim against Pangburn and Ford pursuant to Section 1983 to require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [7] and it is further

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

7    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment failure-to-intervene claims against Biggar; (2) Eighth Amendment deliberate medical indifference claims; (3) constitutional claims and retaliation claims against Ford related to the Incident Report; and (4) conspiracy claims pursuant to Section 1985; [8] and it is further

8    If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) Eighth Amendment excessive force claims Pangburn and Ford; (2) First Amendment retaliation claims against Pangburn and Ford related to the use of force; and (3) conspiracy claims pursuant to Section 1983; and it is further

**\*9** **ORDERED** that Biggar is **DISMISSED** as a defendant herein; and it is further

**ORDERED** the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff.

**Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)**
Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 35 of 88

2020 WL 12933756

**All Citations**

Not Reported in Fed. Supp., 2020 WL 12933756

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 3649887
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicole Lee DUNN, Plaintiff,

v.

William Edward GABRIEL, Sheriff's Deputy Detective Police Onondaga (last known), Defendant.

5:23-CV-0662 (AMN/ML)
|
Signed June 14, 2024

**Attorneys and Law Firms**

NICOLE LEE DUNN, Plaintiff, Pro Se, 8418 Theodolite Drive #722, Baldwinsville, New York 13027.

**REPORT and RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

*1 The Clerk has sent a *pro se* amended complaint together with a "Statement" in the above captioned action filed by Plaintiff Nicole Lee Dunn ("Plaintiff") to the Court for review. (Dkt. Nos. 19, 20.) For the reasons discussed below, I recommend that Plaintiff's Amended Complaint (Dkt. No. 19) be dismissed without leave to amend.

**I. BACKGROUND**

The Amended Complaint is brought against Defendant William Edward Gabriel, Sheriff's Deputy Detective Police Onondaga (last known) ("Defendant"). (*See generally* Dkt. No. 19.) Like the Complaint, the Amended Complaint is difficult to decipher but appears to allege that Plaintiff and Defendant were married and are now divorced. (Dkt. No. 19 at 3.) The Amended Complaint appears to allege that, since their divorce, Defendant has "utilized ... personal relationships" to negatively impact Plaintiff's life. (*Id.*)

The Amended Complaint alleges that on February 2, 2013, Defendant was present at the scene of death for Plaintiff's mother's, Salena Bennett. (Dkt. No. 19 at 8.)

The Amended Complaint does not appear to list any causes of action but states that it is pursuant to civil and U.S. Constitutional rights and applicable penal laws. (Dkt. No. 19 at 3-4; *see generally* Dkt. No. 19.) The Amended Complaint does not appear to seek any specific relief. (*See generally* Dkt. No. 19.)

**II. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

"may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*2**  "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## III. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

42 U.S.C. § 1983 establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

Plaintiff's Amended Complaint is largely incomprehensible and must be dismissed for three reasons.

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to

"provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

**\*3** As it currently stands, Plaintiff's Amended Complaint wholly fails to provide fair notice of the claims she attempts to assert. Given its lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claims against Defendant are entirely unclear.

Second, "[t]o state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff's grievances against Defendant are related to his work as a police officer or that Defendant otherwise engaged in *any* conduct arguably invoking "the real or apparent power of the police department." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *see Claudio v. Sawyer*, 409 F. App'x 464, 466 (2d Cir. 2011) (holding that the "plaintiffs failed sufficiently to allege that Sawyer, an off-duty police officer, acted under color of state law in shooting Jayson Tirado, as required for a § 1983 claim."); *Bonsignore v. City of New York*, 683 F.2d 635, 638-39 (2d Cir. 1982) (denying motion to amend complaint because shooting of wife by off-duty officer with service pistol not "committed in the performance of any actual or pretended duty").

Third, to the extent that the Amended Complaint asserts claims pursuant to the New York Penal Law or other criminal statutes against Defendant, I recommend that they be dismissed as not cognizable. *See Morrow v. Vanderwerff*, 19-CV-0555, 2019 WL 13455972, at *7 (N.D.N.Y. July 23, 2019) (Hurd, J.) (citing *Houston v. Collerman*, 16-CV-1009, 2016 WL 6267968, at *11 (N.D.N.Y. Oct. 26, 2016) (Sannes, J.) ("[I]t is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 414-15 (N.D.N.Y. 2013) (Hurd, J.) ("[I]nmates do not enjoy a constitutional right to an investigation of any kind by government officials."); *Pine v. Seally*, 09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (same) (Baxter, M.J)) (holding that the plaintiff "does not have a constitutional right to bring criminal charges" and that "the refusal to investigate accusations of criminal misconduct does not give rise to a cognizable Section 1983 claim."); *Porter v. Goord*, 04-CV-0485, 2004 WL 2271383, at *3 (W.D.N.Y. Oct. 5, 2004) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)) ("a private citizen is not constitutionally entitled to a criminal investigation or the pursuit of a criminal prosecution"); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382-83 (2d Cir. 1973) (finding no authority, in civil rights action, to compel state prosecutors to investigate and prosecute violation of New York state criminal law).

**\*4** As a result, I recommend that Plaintiff's claims against Defendant be dismissed.

### IV. OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [1]

[1]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this instance, I conclude that any further amendments to Plaintiff's Amended Complaint would be futile. In this action, Plaintiff has already amended the complaint once as of right pursuant to Fed. R. Civ. P. 15(a)(1). Plaintiff's claims and allegations are factually and legally frivolous. Any additional amendments to Plaintiff's Amended Complaint are not likely to be productive. As a result, I recommend that Plaintiff's Amended Complaint be dismissed without leave to amend. *See Igarashi v. Skull & Bone*, 438 F. App'x 58, 59-60 (2d Cir. 2011) (finding that the district court "properly dismissed the complaint without providing an opportunity to amend because any amendment would have been futile in light of the incredible nature of the allegations."); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

**\*5** **ACCORDINGLY**, it is

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO AMEND** the Amended Complaint (Dkt. No. 19) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [2]

[2]      The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

3      If you are proceeding *pro se* and served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 3649887

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3371029
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicole Lee DUNN, Plaintiff,

v.

William Edward GABRIEL, Sheriff's Deputy Detective Police Onondaga (last known), Defendant.

5:23-CV-0662 (AMN/ML)
|
Signed July 11, 2024

**Attorneys and Law Firms**

NICOLE LEE DUNN, 8418 Theodolite Drive #722, Baldwinsville, New York 13027, Plaintiff, Pro Se.

## ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

**\*1** On June 5, 2023, Plaintiff *pro se* Nicole Lee Dunn ("Plaintiff") commenced this civil rights action against Defendant William Edward Gabriel ("Defendant"). *See* Dkt. No. 1. The matter was referred to United States Magistrate Judge Miroslav Lovric, who, on October 16, 2023, issued an Order and Report-Recommendation granting Plaintiff's second amended application to proceed *in forma pauperis* ("IFP"), [1] and recommending that Plaintiff's complaint be dismissed with leave to amend. *See* Dkt. No. 6 and 9. [2] On December 8, 2023, this Court adopted Magistrate Judge Lovric's October 16 Order and Report-Recommendation in its entirety. *See* Dkt. No. 9.

[1]    On June 5, 2023, Plaintiff filed a Motion for leave to proceed IFP, Dkt. No. 2, which was denied without prejudice, Dkt. No. 4, and on October 11, 2023, Plaintiff filed a second motion for leave to proceed IFP, Dkt. No. 5.

[2]    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

On March 12, 2024, following a series of letter motions and objections (*see* Dkt. Nos. 10-18), Plaintiff filed an Amended Complaint. *See* Dkt. No. 19. As in the original complaint, and reading the Amended Complaint liberally, Plaintiff alleges that Defendant, who was previously married to Plaintiff, improperly used his position in law enforcement, as well as knowledge about Plaintiff, in a way that negatively impacted Plaintiff's life. *See* Dkt. No. 19 at 3-4.

The Amended Complaint was also referred to United States Magistrate Judge Lovric, who, on June 14, 2024, issued an Order and Report-Recommendation ("Report-Recommendation") recommending the Amended Complaint be dismissed without leave to amend. *See* Dkt. No. 21 at 9. On June 18, 2024, Plaintiff timely filed Objections to the Report-Recommendation. Dkt. No. 22. [3]

[3]    Plaintiff filed a document titled "Notice of Motion" in response to Magistrate Judge Lovric's Report-Recommendation. Dkt. No. 22. The Court is mindful that due to Plaintiff's *pro se* status, her submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citations omitted). Therefore, the Court construes Plaintiff's "Notice of Motion," Dkt. No. 22, as a timely Objection to Magistrate Judge Lovric's recommendation that the Amended Complaint be dismissed without leave to amend.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

A district court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). A district court reviews those portions of a magistrate judge's report-recommendations as to which there was no properly preserved objection for clear error. *Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

  **\*2**  "[I]n a *pro se* case ... the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Machicote v. Ercole*, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. 2011) (citation omitted); *accord Caldwell*, 2022 WL 16918287, at *1. After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Plaintiff's Objection to the Report-Recommendation is difficult to decipher. *See generally* Dkt. No. 22. From what the Court can glean, the Objection generally takes issue with the outcome of Magistrate Judge Lovric's Report-Recommendation but does not "specifically and clearly" address the findings in the Report-Recommendation. *See Machicote*, 2011 WL 3809920, at *2. Plaintiff has thus failed to preserve any specific objection, and the Court reviews the Report-Recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.").

Magistrate Judge Lovric concluded that the Amended Complaint must be dismissed for three reasons. *See* Dkt. No. 21 at 4. First, Magistrate Judge Lovric found that Plaintiff's Amended Complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Fed. R. Civ. P. 10, which provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* at 4-5. Magistrate Judge Lovric ultimately concluded that Plaintiff's Amended Complaint failed to comply with Fed. R. Civ. P. 8 and 10 because the Amended Complaint—like the original complaint—was "largely incomprehensible" and failed "to provide fair notice of the claims [Plaintiff was attempting] to assert." *Id.* (citing *Whitfield v. Johnson*, 763 F. App'x 106, 108 (2d Cir. 2019) (summary order)).

Second, Magistrate Judge Lovric concluded that Plaintiff failed to state a valid claim pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant because the Amended Complaint "fail[ed] to allege facts plausibly suggesting that Plaintiff's grievances against Defendant [were] related to his work as a police officer or that Defendant otherwise engaged in *any* conduct arguably invoking 'the real or apparent power of the police department.' " *Id.* at 6 (emphasis in original) (quoting *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)).

2024 WL 3371029

Third, Magistrate Judge Lovric concluded that, to the extent Plaintiff's Amended Complaint was brought pursuant to the New York Penal Law or other criminal statutes, such claims should be "dismissed as not cognizable," in part because private citizens are not afforded a constitutional right to bring a criminal complaint against another individual. *Id.* at 7 (citing, *inter alia, Morrow v. Vanderwerff*, 9:19-CV-0555 (DNH/DJS), 2019 WL 13455972, at *7 (N.D.N.Y. July 23, 2019)).

**\*3** Finally, Magistrate Judge Lovric concluded that "Plaintiff's claims and allegations are legally frivolous" and, given that this was Plaintiff's second attempt to bring forth a cognizable cause of action, recommended leave to amend be denied because "any further amendments to Plaintiff's Amended Complaint would be futile." *Id.* at 8 (citing, *inter alia, Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003)). The Court agrees with Magistrate Judge Lovric's recommendation for the reasons set forth in the Report-Recommendation.

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

### IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report-Recommendation, Dkt. No. 21, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Amended Complaint, Dkt. No. 19, is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules. [4]

[4]    The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2024 WL 3371029

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 44 of 88

2023 WL 2988753
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Peter Joseph POLINSKI, Plaintiff,

v.

ONEIDA COUNTY SHERIFF, in his official and individual capacities; Comptroller of City
of Utica, William Moorehouse; KeyBank of the City of Utica; and City of Utica, Defendants.

6:23-CV-0316 (DNH/ML)
|
Signed April 17, 2023
|
Filed April 18, 2023

**Attorneys and Law Firms**

PETER JOSEPH POLINSKI, Plaintiff, Pro Se, 5735 Cavanaugh Road, Suite 614, Marcy, New York 13403.

ZACHARY OREN, ESQ., Assistant Corp. Counsel, CORPORATION COUNSEL – CITY OF UTICA, Counsel for Defendants
Comptroller of the City of Utica and City of Utica, 1 Kennedy Plaza, 2nd Floor, Utica, New York 13502.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1**  The Clerk has sent a *pro se* amended complaint in the above captioned action together with an application to proceed *in forma pauperis* filed by Peter Joseph Polinski ("Plaintiff") to the Court for review. (Dkt. Nos. 2, 4.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's Amended Complaint be dismissed in its entirety. (Dkt. Nos. 2, 4.)

## I. BACKGROUND

On March 9, 2023, Plaintiff commenced this action by filing a *pro se* Complaint against defendants Oneida County Sheriff, Comptroller of City of Utica, KeyBank of the City of Utica, and City of Utica (collectively "Defendants"). (Dkt. No. 1.) On March 17, 2023, Plaintiff filed an amended complaint as of right, which supersedes his original complaint. (*See* Dkt. No. 4 [Am. Compl.]); *Int'l Controls Corp v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."). Thus, presently before the undersigned for review pursuant to 28 U.S.C. § 1915, is Plaintiff's Amended Complaint. (Dkt. No. 4.)

The Amended Complaint is thirty-one pages with an attached exhibit that is ninety-five pages in length. (*See generally* Dkt. No. 4.) The Amended Complaint and its attachment are predominantly a series of incoherent text, devoid of factual assertions. (*Id.*)

Although not clear from the Amended Complaint, Plaintiff appears to allege that on October 31, 2022, he provided checks to "THE CITY OF UTICA FINANCE DEPARTMENT OFFICE OF THE COMPTROLLER" but that those payments were "fraudulently transferred by [Defendants] the Comptroller of Utica and Key Bank." (Dkt. No. 4 at 8.)

The Amended Complaint alleges that on March 1, 2023, two Oneida County Sheriffs went to Plaintiff's parents' home, where Plaintiff does not live. (*Id.*) Plaintiff alleges that, on March 1, 2023, he explained to an Oneida County Sheriff that "the

instruments were legal tender and that the instruments needed to go to the Treasury Window" and "the authority behind the negotiable instrument law." (Dkt. No. 4 at 9.)

Plaintiff alleges that on March 7, 2023, his father (Peter Anthony Polinski) received a phone call (from an unspecified individual) "menacing and harassing him with threats of violence, to kidnap his son with an unlawful arrest." (Dkt. No. 4 at 8-9.)

Plaintiff's Amended Complaint lists numerous statutes, contains biblical references, and refers to, *inter alia*, the Magna Carta, the 1620 Mayflower Compact, and the 1689 English bill of rights. (*See generally* Dkt. No. 4; Dkt. No. 4 at 7.) Notwithstanding, the Amended Complaint references the following thirteen "counts" that appear to be Plaintiff's claims: (1) a claim that Defendants violated Plaintiff's constitutional rights under color of law pursuant to 42 U.S.C. § 1983; (2) a claim that Defendants conspired to interfere with Plaintiff's civil rights pursuant to 42 U.S.C. § 1985; (3) a claim of conspiracy against Defendants pursuant to 18 U.S.C. § 241; (4) a claim of deprivation of rights under color of law against Defendants pursuant to 18 U.S.C. § 242; (5) a claim that Defendants interfered with commerce pursuant to 18 U.S.C. § 1951; (6) a claim that Defendants conspired to commit an offense or defraud the United States pursuant to 18 U.S.C. § 371; (7) a claim that Defendants refused to pay as evidence of embezzlement pursuant to 18 U.S.C. § 3487; (8) a claim that Defendants committed the misdemeanor of menacing in the third degree in violation of N.Y. Penal Law § 120.15; (9) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 1961; (10) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 875; (11) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 471; (12) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 641; and (13) a claim that Defendants violated Plaintiff's rights pursuant to 18 U.S.C. § 115. (Dkt. No. 4 at 25-27.)

**\*2**  As relief, Plaintiff seeks damages in the amount of $39,000,000.00 from each Defendant for a total of $195,000,000.00 in compensatory damages, treble punitive damages, a "permanent injunction and restraining order ... requiring Defendants to adopt appropriate policies related to the hiring and supervision of its police officers ... who are ... depriving [Plaintiff] of his Constitutional Rights"; and such other relief as may be just and proper. (Dkt. No. 4 at 29-30.)

Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*
"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT
Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 46 of 88
Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)
2023 WL 2988753

payment of the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

 **\*3**  Plaintiff's Amended Complaint is nearly impossible to decipher. (*See generally* Dkt. No. 4.) The Amended Complaint is replete with pseudo-legal jargon of the kind typically used by litigants who affiliate themselves with the sovereign citizen movement. (*Id.*) The sovereign citizen movement is "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has labeled the sovereign citizens a domestic terrorist group." *United States v. Ulloa*, 511 F. App'x 105, 107 (2d Cir. 2013).

I recommend dismissal of Plaintiff's Amended Complaint because it is frivolous. By way of example, the Amended Complaint states the following:

> By the grace of God almighty, and through the supremacy clause of the Constitution (Article VI Clause 2 & 3) and the below-listed treaties of supreme law, it is I alone, who shall determine my status, standing, honor and jurisdiction. I hereby invoke and stand upon all my natural rights, given by my God, which are written in the documents listed below. These, and all others, are universally known as supreme law of the land:

(Dkt. No. 4 at 7.)

"People who identify as sovereign citizens use maneuvers like [a] notary presentment to avoid paying debts or to collect debts that are not actually owed." *Balash-Ioannidou v. Contour Mortg. Corp.*, 22-CV-4506, 2022 WL 3358082, at *2 (E.D.N.Y. Aug. 15, 2022) (citing *Kesick v. Ulloa*, 10-CV-1248, 2012 WL 2873364, at *3 (N.D.N.Y. July 12, 2012) (McAvoy, J.) (the plaintiff filed fraudulent papers entitled "notary presentment" with the Town of Ulster Justice Court falsely claiming that a Justice of the Ulster Town Court owed him the sum of $176,000,000.00); *McKay v. U.S. Bank*, 14-CV-0872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank)); *see Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

As a result, I recommend that Plaintiff's Amended Complaint be dismissed as frivolous.

In the alternative, I recommend that Plaintiff's Amended Complaint be dismissed in its entirety (a) in part for failure to state a claim upon which relief may be granted, and (b) in part for lack of standing.

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 47 of 88

**A. Plaintiff's Claims Asserting Various New York State and Federal Criminal Provisions**

To the extent that Plaintiff attempts to assert claims pursuant to New York State Penal Law § 120.15, and 18 U.S.C. §§ 115 (Influencing, Impeding, or Retaliating Against a Federal Officer), 241 (Conspiracy against Rights), 242 (Deprivation of Rights under Color of Law), 371 (Conspiracy to Commit Offense or to Defraud the United States), 471 (Obligations or Securities of United States), 641 (Public Money, Property or Records), 875 (Interstate Communications), and 1951 (Interference with Commerce by Threats or Violence), I recommend that those claims be dismissed because Plaintiff lacks standing to pursue them.

There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

**\*4** As a result, I recommend dismissal of all of Plaintiff's claims that are premised on alleged violations of federal or state criminal laws. *See Walsh v. Krantz*, 386 F. App'x 334, 336 (3d Cir. 2010) (affirming district court dismissal that found there was no "private right of enforcement" for violations of 18 U.S.C. § 875); *Lawton v. Wells Fargo Bank, N.A.*, 22-3294, 2023 WL 2539000, at *4 (E.D. Pa. Mar. 16, 2023) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) (no cause of action for forgery); *McCann v. Falato*, 14-4869, 2015 WL 6445859, at *3 (D.N.J. Oct. 23, 2015) (no cause of action under 18 U.S.C. § 371)) (dismissing the plaintiff's claims pursuant to 18 U.S.C. §§ 371, 471 because those "are criminal statutes that do not contain private rights of action."); *Allen v. FMR LLC*, 23-CV-0031, 2023 WL 142903, at *2 (D. Ariz. Jan. 10, 2023) (dismissing the plaintiff's claims pursuant to 18 U.S.C. §§ 471, 641 because "these are criminal statutes and do not create any private right of action."); *Isaacs v. Steven Allen Isaacs*, 21-CV-1912, 2022 WL 18492546, at *4 n.7 (M.D. Fla. Oct. 27, 2022) (citing *Pompura v. Paxton*, 16-CV-1099, 2016 WL 11586260, at *3 (W.D. Tex. Sept. 30, 2016) (finding that 18 U.S.C. § 641 does not provide for a private right of action and collecting cases)) (dismissing the plaintiff's claims for lack of subject matter jurisdiction and noting that "several of the federal statutes Plaintiff references do not provide private causes of action."); *Hall v. Sampson*, 21-CV-4839, 2022 WL 2068248, at *2 n.2 (E.D. Pa. June 8, 2022) (collecting cases) (holding that the plaintiff cannot bring criminal charges against the defendants through a private lawsuit and that claims pursuant to, *inter alia*, 18 U.S.C. §§ 241, 371 do not give rise to a civil cause of action); *Barnaby v. Michigan State Gov't*, 22-CV-1146, 2022 WL 19005214, at *4 (W.D. Mich. Dec. 14, 2022) (dismissing the plaintiff's claim pursuant to 18 U.S.C. § 471 because it is a criminal statute that does "not provide a private right of action."); *Ojeda v. Mendez*, 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (quoting *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)) (holding that 18 U.S.C. § 1951 is a federal criminal statute, which may be "prosecuted by the Federal Government, not ... by private complaints," but noting that it is a predicate act for purposes of a RICO violation and thus, the allegations may be relevant to the surviving RICO claim); *Lewis v. Soc. Sec. Admin.*, 20-CV-9277, 2020 WL 6647424, at *3 (S.D.N.Y. Nov. 10, 2020) (dismissing as frivolous the plaintiff's claim pursuant to, *inter alia*, 18 U.S.C. § 1951 because it seeks to prosecute the defendant for violations of the Hobbs Act); *Patterson v. Patterson*, 16-CV-0844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)) ("Courts within this Circuit have accordingly held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.' "); *Brett v. Rodriguez*, 15-CV-2366, 2016 WL 3704917, at *3-4 (M.D. Pa. Mar. 21, 2016) (finding that 18 U.S.C. § 115, as a criminal statute, does not create a private right of action); *Walthour v. Herron*, 10-01495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (recognizing no private right of action under, *inter alia*, 18 U.S.C. §§ 241, 371).

As a result, I recommend that, in the alternative, Plaintiff's claims pursuant to New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951, be dismissed because Plaintiff lacks standing to pursue them.

### B. Claim Pursuant to 42 U.S.C. § 1983

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### 1. Defendant Key Bank

Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

**\*5** With respect to Defendant Key Bank of the City of Utica, the Amended Complaint fails to allege facts plausibly suggesting that it is a state actor or that it collaborated with a state entity to deprive Plaintiff of a constitutional right.

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Key Bank be dismissed for failure to state a claim upon which relief may be granted.

### 2. Defendants Oneida County Sheriff, Comptroller of the City of Utica, and City of Utica

Although Defendants Oneida County Sheriff, Comptroller of the City of Utica, and City of Utica are state actors for purposes of liability pursuant to 42 U.S.C. § 1983, the extremely terse allegations in the Complaint fail to allege that they violated Plaintiff's rights under any statute or constitutional provision.

### a. Defendant Oneida County Sheriff

A claim against the Oneida County Sheriff in his official capacity, is essentially a suit against the Oneida County Sheriff's Department. [3] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)("An official capacity suit against a public servant is treated as one against the governmental entity itself.").

[3]     It is unclear at this juncture whether Plaintiff's claims against Defendant Oneida County Sheriff in his official capacity, should be deemed as claims against the County of Oneida or the Oneida County Sheriff's Department. *Compare Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) ("It is well settled that an entity such as the Suffolk

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

County Police Department is an 'administrative arm' of the same municipal entity as Suffolk County and thus lacks the capacity to be sued."), *and Krug v. Cty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.) ("A city police department is not an independent, suable entity separate from the municipality in which the police department is organized."), *with DiJoseph v. Erie Cnty.*, 18-CV-0919S, 2020 WL 4194136, at *8 (W.D.N.Y. July 21, 2020) (noting that "[u]nder New York State Constitution article XIII, § 13(a) a county cannot be made liable for the acts of its sheriff" and finding that the County—absent a local law agreeing to assume liability for the Sheriff's actions—is not the proper defendant in a claim pursuant to 42 U.S.C. § 1983 against the Sheriff). However, this distinction is immaterial for purposes of this Order and Report-Recommendation.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

 **\*6**  Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Here, the Amended Complaint fails to allege facts plausibly suggesting a basis for municipal liability. Plaintiff appears to complain of a single incident, during which the officers did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with the deputies of the Oneida County Sheriff's Department who allegedly interacted with Plaintiff and his father on March 1, 2023.

To the extent that Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983 against the Oneida County Sheriff in his individual capacity, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. [4] The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

4    Before *Tangreti*, various courts in the Second Circuit have postulated how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (Hurd, J.) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors), *rev'd on other grounds sub nom.*, *Pearce v. Labella*, 473 F. App'x 16 (2d Cir. 2012) (summary order); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first part of the third *Colon* categories pass *Iqbal*'s muster...."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard).

**\*7**    Here, Plaintiff fails to allege facts plausibly suggesting any action taken by Defendant Oneida County Sheriff individually. (*See generally* Dkt. No. 4.) The Amended Complaint alleges that "two Oneida County sheriffs" went to his parents' house on March 1, 2023, where he does not live. (Dkt. No. 4 at 8-9.) However, there is only one Oneida County Sheriff, *see* N.Y. County Law § 650; *see generally DiJoseph v. Erie Cnty.*, 18-CV-919S, 2020 WL 4194136, at \*8 (W.D.N.Y. July 21, 2020) ("A sheriff is an elected county officer."), thus, it appears that Plaintiff was referring to two deputies of the Oneida County Sheriff's Department. Further, in any event, the Amended Complaint does not allege that Plaintiff interacted with the employees of the Sheriff's Department who allegedly went to his parents' property. Moreover, Plaintiff fails to allege facts plausibly suggesting that these individuals violated his rights in any way. In addition, Plaintiff's allegation that he "explained to an Oneida County Sheriff that the instruments were legal tender" and "the authority behind the negotiable instrument" does not allege that his rights were violated by Defendants or any employee of the Oneida County Sheriff's Department. (Dkt. No. 4 at 9.)

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Oneida County Sheriff in his individual and official capacities be dismissed for failure to state a claim upon which relief may be granted.

### b. Defendant Comptroller of the City of Utica

To the extent that Plaintiff asserts a claim against Defendant Comptroller of the City of Utica in his official capacity, it is essentially a claim against the City of Utica because the Comptroller is an arm of the City of Utica and is not amenable to suit. *See Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 380 (S.D.N.Y. 2007) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against [municipal] officials sued in their official capacity ... should be treated as suits against the [municipality]."); *see also Zuk v. Gonzalez*, 07-CV-0732, 2007 WL 2163186, at \*2 (N.D.N.Y. July 26, 2007) ("[T]o the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County ... as a Defendant.")).

Courts within the Second Circuit regularly dismiss with prejudice official-capacity claims against a public official when the claims are duplicative of the claims against the governmental entity for which the official works. *See Kanderskaya v. City of N.Y.*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing with prejudice claims against a police officer sued in an official capacity "because they are duplicative of [the plaintiff's] other claims against [the municipality]") *aff'd*, 590 F. App'x 112 (2d Cir. 2015); *Quinn v. Gould*, 19-CV-0820, 2020 WL 1234553, at \*4 (D. Conn. Mar. 13, 2020) ("[D]istrict courts within the Second Circuit consistently dismiss claims asserted against officials in their official capacities as duplicative where the plaintiff has named the municipal entity as a defendant.") (citations omitted).

As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity be dismissed as duplicative of his claim against Defendant City of Utica.

With respect to Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his individual capacity, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

As set forth above in Part IV.B.2.a. of this Order and Report-Recommendation, pursuant to the Second Circuit's holding in *Tangreti*, "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. The Amended Complaint alleges that Plaintiff "tendered

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 51 of 88
Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)
2023 WL 2988753

payment to THE CITY OF UTICA FINANCE DEPARTMENT OFFICE OF THE COMPTROLLER" but that his payments were "fraudulently transferred ... under 18 U.S. Code § 648." (Dkt. No. 4 at 8.) This conclusory allegation fails to allege facts plausibly suggesting that Defendant Comptroller of the City of Utica took any action that violated Plaintiff's rights.

 **\*8**  As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Comptroller of the City of Utica be dismissed for failure to state a claim upon which relief may be granted.


### c. Defendant City of Utica

As set forth above in Part IV.B.2.a. of this Order and Report-Recommendation, a municipality may be held liable pursuant to 42 U.S.C. § 1983 only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

The Amended Complaint fails to allege facts plausibly suggesting that the City of Utica's policies deprived Plaintiff of his constitutional rights. As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant City of Utica be dismissed for failure to state a claim upon which relief may be granted.


### C. Claim Pursuant to 42 U.S.C. § 1985

Although the Amended Complaint fails to specify which of § 1985's three subdivisions Plaintiff intends to invoke, only § 1985(3) is relevant here. [5]

[5]    Section 1985(1) provides a damages action against two or more persons who conspire to prevent, by force, intimidation or threat, any federal officer from performing his or her official duties. Section 1985(2) provides a cause of action against two or more persons who conspire to obstruct justice in the federal courts by force, intimidation, or threat. None of the facts alleged in the Amended Complaint relate in any way to these causes of action.

"[T]o make out a violation of § 1985(3) ..., the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 103 S. Ct. 3352, 3356 (1983). A "conspiracy" requires, for purposes of Section 1985, "a plurality of actors committed to a common goal." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 456 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

In addition, a claim pursuant to Section 1985 requires that a plaintiff allege "some racial or [ ] otherwise class-based animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). The Amended Complaint fails to allege any racial or class-based animus behind the alleged conspirators' action. (*See generally* Dkt. No. 4.) "When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under Section 1985 must be dismissed." *Morpugo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010).

Here, Plaintiff does not allege any race or class-based animus behind Defendants' actions. Thus, Plaintiff does not sufficiently allege a conspiracy pursuant to 42 U.S.C. § 1985 between Defendants and/or others to deprive Plaintiff of any federally protected rights. As a result, I recommend that Plaintiff's claim pursuant to 42 U.S.C. § 1985 against Defendants be dismissed for failure to state a claim upon which relief may be granted.


### D. RICO (18 U.S.C. § 1691 et seq.) Claim [6]

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 52 of 88

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

6    Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Amended Complaint (and his Complaint, which also appeared to assert a RICO claim [Dkt. No. 1 at 25-26]), Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.) As a result, I recommend that Plaintiff's RICO claim be dismissed. *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, *12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, *6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

**\*9** It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.' " *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

The Amended Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Amended Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, I find that the Amended Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' "). Although the Amended Complaint lists statutes that constitute "racketeering activity" (*see, e.g.*, Dkt. No. 4 at 26 [referring to 18 U.S.C. § 1951]), it fails to allege facts plausibly suggesting that Defendants engaged in those predicate acts. [7]

7    For example, to demonstrate that Defendants engaged in extortion, Plaintiff must allege that Defendants "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by ... extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951; *see also McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992). Extortion is defined as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *Entretelas Americanas S.A. v. Soler*, 19-CV-3658, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020), *aff'd*, 840 F. App'x 601 (2d

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 53 of 88

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 2988753

Cir. 2020), *as amended* (Jan. 7, 2021) (citation omitted). "[F]atal" to an extortion claim is "[t]he absence of allegations of force, violence or fear." *Entretelas Americanas*, 2020 WL 9815186, at *10 (collecting cases).

**\*10** For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

#### E. Claim Pursuant to 18 U.S.C. § 3487

To the extent that Plaintiff attempts to assert a claim against Defendants pursuant to 18 U.S.C. § 3487, I recommend that it be dismissed. 18 U.S.C. § 3487 states that, "[t]he refusal of any person ... charged with the safe-keeping ... of the public money ... belonging to the United States, ... to transfer or disburse any such money, promptly, upon the legal requirement of any authorized officer, shall be deemed ... prima facie evidence of ... embezzlement." Thus, 18 U.S.C. § 3487 does not provide a private cause of action and relates solely to evidence sufficient to establish embezzlement.

As a result, I recommend that Plaintiff's claim pursuant to 18 U.S.C. § 3487 be dismissed.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

[8]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, I find that leave to replead would be futile with respect to Plaintiff's claims pursuant to: (1) New York State and federal criminal provisions (including New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951); (2) 18 U.S.C. § 3487; and (3) 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity, because the issues with those claims are substantive such that a better pleading will not cure them. *See Maretta-Brooks v. Comm'r of Soc. Sec.*, 22-CV-1261, 2023 WL 2655195, at *6 (N.D.N.Y. Mar. 27, 2023) (Lovric, M.J.) (recommending dismissal without leave to replead the plaintiff's claims alleging violations of criminal statutes "because the problem with those claims is substantive such that a better pleading will not cure it"); *Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at * (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (recommending dismissal without leave to amend the plaintiff's claims pursuant to 18 U.S.C. §§ 241, 242); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *5 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (dismissing without leave to amend the plaintiff's claims seeking to enforce New York State criminal statutes).

**\*11** Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim pursuant to (1) 42 U.S.C. § 1983 against Defendants (a) Key Bank of the City of Utica, (b) City of Utica, (c) Oneida County Sheriff in his official and individual capacities, and (d) Comptroller of the City of Utica in his individual capacity; (2) 42 U.S.C. § 1985 against Defendants, and (3) 18 U.S.C. § 1961 against Defendants, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Amended Complaint with respect to those claims.

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 54 of 88
**Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)**
2023 WL 2988753

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Amended Complaint (Dkt. No. 4) as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED in the alternative** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on (1) 42 U.S.C. § 1983 against Defendants (a) Key Bank of the City of Utica, (b) City of Utica, (c) Oneida County Sheriff in his official and individual capacities, and (d) Comptroller of the City of Utica in his individual capacity; (2) 42 U.S.C. § 1985 against Defendants, and (3) 18 U.S.C. § 1961 against Defendants, because it fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED in the alternative** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on New York State and federal criminal provisions (including New York State Penal Law § 120.15, and 18 U.S.C. §§ 115, 241, 242, 371, 471, 641, 875, and 1951) because Plaintiff lacks standing to pursue claims pursuant to those statutes; and it is further respectfully

 **\*12  RECOMMENDED in the alternative** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 4) to the extent that it asserts claims based on (1) 18 U.S.C. § 3487 against Defendants; and (2) 42 U.S.C. § 1983 against Defendant Comptroller of the City of Utica in his official capacity, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

[9]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R.

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 55 of 88
**Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)**
2023 WL 2988753

Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

10    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2988753

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Polinski v. Oneida County Sheriff, Not Reported in Fed. Supp. (2023)

2023 WL 3344060

2023 WL 3344060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Peter Joseph POLINSKI, Plaintiff,

v.

ONEIDA COUNTY SHERIFF et al., Defendants.

6:23-CV-316
|
Signed May 10, 2023

**Attorneys and Law Firms**

PETER JOSEPH POLINSKI, Plaintiff, Pro Se, 5735 Cavanaugh Road, Suite 614, Marcy, NY 13401.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1**  On March 9, 2023, *pro se* plaintiff Peter Joseph Polinski ("plaintiff") filed this civil rights action alleging that defendants Keybank, the Comptroller of Utica, the City of Utica, and the Oneida County Sheriff's Office were liable for their involvement in certain fraudulently transferred payments. Dkt. No. 1. Along with his complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2. Thereafter, plaintiff filed an amended complaint as of right. Dkt. No. 4. Plaintiff then moved for injunctive relief, Dkt. No. 8, which was denied, Dkt. No. 11. The amended complaint was referred to the assigned Magistrate Judge for an initial review of it sufficiency. *Id.*

On April 18, 2023, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application for the purpose of filing and advised by Report & Recommendation ("R&R") that the amended complaint be dismissed as frivolous or, in the alternative, dismissed with limited leave to replead certain claims but not others. Dkt. No. 13.

As Judge Lovric explained, plaintiff's amended complaint was "replete with pseudo-legal jargon of the kind typically used by litigants who affiliate themselves with the sovereign citizen movement." Dkt. No. 13. While Judge Lovric's R&R was under review by this Court, plaintiff filed another motion for injunctive relief, Dkt. No. 14, and exhibits to his pleading, Dkt. No. 15.

Plaintiff has also filed objections. Dkt. No. 16. Upon *de novo* review of the portions to which plaintiff has objected, the R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C). In particular, the Court agrees with Judge Lovric's bottom-line conclusion: the amended complaint is frivolous. [1] The pleading references everything from the King James Version of the Holy Bible and Magna Carta to the Geneva Conventions and the International Covenant of Civil and Political Rights. What the pleading does not do, however, is plausibly allege any facts that might tend to show that the checks plaintiff claims to have sent to the City of Utica's Comptroller's Officer were "fraudulently transferred" to Keybank. Instead, the rest of plaintiff's pleading quotes extensively from various legal texts, treatises, and other documents, without articulating any kind of statement, let alone a short and plain one, that might entitle him to relief under the law—certainly not the $585,000,000.00 in relief he has requested in the *ad damnum* clause of his operative pleading.

[1]    Plaintiff's exhibits do not provide a basis to change this conclusion. Dkt. No. 15.

Therefore, it is

2023 WL 3344060

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED as frivolous.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3344060

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Polinski v. Oneida County Sheriff, Not Reported in Fed. Rptr. (2023)

2023 WL 8357375

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 58 of 88

2023 WL 8357375
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Peter Joseph POLINSKI, Plaintiff-Appellant,

v.

ONEIDA COUNTY SHERIFF, in his Official and individual capacities, et al., Defendants-Appellees.

23-867
|
October 12, 2023

N.D.N.Y., 23-cv-316, Hurd, J., Lovric, M.J.

**Attorneys and Law Firms**

Peter Joseph Polinski, Marcy, NY, Pro Se.

Kenneth L. Bobrow General Attorney Esq., Felt Evans, LLP, Clinton, NY, Peter M. Rayhill Esq., Oneida County Attorney, Utica, NY, for Defendant-Appellee Oneida County Sheriff.

Zachary Oren Esq., City of Utica Law Department, Utica, NY, for Defendants-Appellees Comptroller of City of Utica, William Moorehouse, City of Utica.

Keybank of the City of Utica, Utica, NY, Pro Se.

Emily J. Mathieu, Thompson Hine LLP, New York, NY, for Defendant-Appellee Keybank of the City of Utica.

Present: Barrington D. Parker, Eunice C. Lee, Sarah A. L. Merriam, Circuit Judges.

**Opinion**

 **\*1**  Appellant, proceeding *pro se*, moves for leave to proceed *in forma pauperis* ("IFP"), injunctive and declaratory relief, removal, and other relief. He also petitions for writs of quo warranto, prohibition, and mandamus. Upon due consideration, it is hereby ORDERED that the IFP motion is DENIED as unnecessary because IFP status was previously granted by the district court and not revoked. *See* Fed. R. App. P. 24(a)(3). It is further ORDERED that the remaining motions are DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B).

It is further ORDERED that the petitions are DENIED because Appellant has not demonstrated that exceptional circumstances warrant the requested relief. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004); *Abrams v. McGohey*, 260 F.2d 892, 894 (2d Cir. 1958) (per curiam).

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 8357375

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2805162

2017 WL 2805162
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Erick GODLEY, Plaintiff,

v.

ONONDAGA COUNTY, et al., Defendants.

6:16-cv-01419 (DNH/TWD)

|

Signed 01/06/2017

**Attorneys and Law Firms**

ERICK GODLEY, 14-B-1321, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034, pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

 **\*1** The Clerk has sent to the Court for initial review the complaint in this 42 U.S.C. § 1983 civil rights action brought by *pro se* Plaintiff Erick Godley against Defendants Onondaga County, Detective Ann Rether ("Detective Rether"), District Attorney William Fitzpatrick ("DA Fitzpatrick"), Assistant District Attorney Michael Manfredi ("ADA Manfredi"), Attorney Charles Keller ("Keller"), and Key Bank. (Dkt. No. 1.) Plaintiff, who has not paid the filing fee for this action, has filed an application for leave to proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 8.) For the reasons that follow, the Court grants Plaintiff's IFP Application and recommends the *sua sponte* dismissal of the complaint without prejudice.

## I. PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated economic need and has filed the inmate authorization form required in the Northern District to proceed with this matter *in forma pauperis*. (Dkt. No. 9.) Therefore, Plaintiff's IFP Application (Dkt. No. 8) is granted.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Moreover, under 28 U.S.C. § 1915A, a court must, as soon as practicable, *sua sponte* review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 60 of 88

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.*

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. ALLEGATIONS OF THE COMPLAINT

Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges violations of his constitutional rights arising from his arrest on May 31, 2013, in Syracuse, New York, and his subsequent prosecution and conviction. (Dkt. No. 1 at ¶¶ 1, 2.) Plaintiff describes this action as "a case of actual innocence" and claims he is currently incarcerated for a crime, second-degree attempted robbery, which he did not commit. *Id.* at ¶¶ 1, 7.

As set forth in the complaint, on May 31, 2013, at approximately 8:30 a.m., Plaintiff was walking to work while counting his bus fare and lunch money, totaling eight dollars. *Id.* at ¶¶ 20-21. Two unnamed Syracuse police officers observed Plaintiff counting his money. *Id.* at 21. Plaintiff was stopped, questioned, handcuffed, and taken to the Criminal Investigations Division. *Id.* at ¶¶ 21-23. Eventually Detective Rether informed Plaintiff that "there was a robbery and the [two] witnesses say it's you." *Id.* at ¶ 26. Plaintiff declared that he "did not rob anybody." *Id.* at ¶ 27. Detective Rether replied, "we have it on video." *Id.* Thereafter, the two arresting officers walked Plaintiff across the street to the Justice Center, and informed Plaintiff he was being charged with "1st degree robbery and possession of a weapon in the 3rd." *Id.* at ¶ 31.

Plaintiff was "in jail for about a month" before he talked to an attorney. *Id.* Public Defender Attorney Lisa Coma ("Coma") eventually met with Plaintiff. *Id.* at ¶ 35. Coma advised Plaintiff he could plead guilty and accept a prison sentence of two to four years. *Id.* at ¶ 35. Although Plaintiff told Coma he was innocent and requested to view the Key Bank ATM security

2017 WL 2805162

video, Coma advised Plaintiff to accept the plea offer because an "all-white jury" would convict him and he "could end up doing [fifteen] years[.]" *Id.*

**\*3** Despite maintaining his innocence, Plaintiff agreed to accept the plea deal and appeared before Judge Brunetti [1] with Coma. *Id.* However, at the last minute, Plaintiff "could not honestly and truthfully" plead guilty. *Id.* at ¶ 36. Plaintiff wrote a letter to Judge Brunetti informing him what Coma had said and at his next court hearing, Judge Brunetti made Coma "hand over" Plaintiff's file and adjourned the hearing until Plaintiff was appointed a new attorney. *Id.* at ¶ 37.

[1]     The Court notes the Honorable John J. Brunetti is a Court of Claims Judge and Acting Supreme Court Justice for Onondaga County Supreme Court.

In August 2013, Onondaga County appointed Keller to represent Plaintiff. *Id.* at ¶¶ 38, 55. Despite Plaintiff's repeated requests, Keller also failed to obtain a "clear copy" of the Key Bank ATM security video. *Id.*

Plaintiff alleges approximately eight months later, ADA Manfredi altered a copy of the Key Bank ATM security video, "making all the images distorted and a little blurry," thereby, "violating *Brady*." *Id.* at ¶ 40. Plaintiff alleges Keller "purposefully waited and colluded" with the District Attorney's Office in order to allow ADA Manfredi time to manipulate the security video so that Plaintiff could be "maliciously prosecuted" for the May 31, 2013, robbery. *Id.* Further, despite numerous requests, ADA Manfredi refused to provide Plaintiff or his family with an original and "clear" copy of the Key Bank ATM security video. *Id.* at ¶ 43. Plaintiff alleges "they all conspired together and just ignored/did away with this 'critical exculpatory material evidence' and coerced and threatened [Plaintiff] with a possible [twenty-five] year sentence[.]" *Id.* at ¶ 44.

"After ten (10) long hard months, they finally broke [Plaintiff] down" and Keller told Plaintiff that his mother wanted him to "take what you can get and get back to your [family]." *Id.* at ¶ 45. Plaintiff informed Keller he would plead guilty and accept the original plea offer presented by Coma. *Id.* However, ADA Manfredi informed Keller that the original offer was no longer available. *Id.* Instead, Plaintiff would have to accept a five-year sentence. *Id.* On the day of his trial, Keller told Plaintiff he would probably be sentenced to twenty-five years after the jury found him guilty. *Id.* at ¶ 47. Because Plaintiff was "afraid, confused, and more," Plaintiff agreed to plead guilty and accept a five-year sentence. *Id.*

Judge Brunetti, however, would not accept Plaintiff's plea. *Id.* at ¶ 48. Instead, Judge Brunetti advised Keller and ADA Manfredi they needed to agree to the terms of the original plea offer or Plaintiff would be sentenced to seven years, the maximum sentence on a class D felony. *Id.* "Needless to say," ADA Manfredi would not agree to the terms of the original plea offer, and Plaintiff "ended up receiving a seven (7) year prison sentence with five (5) years of PRS" resulting in a "twelve (12) year sentence" even though he is "completely innocent." *Id.* at ¶ 49. [2]

[2]     Although Plaintiff does not include the date of his conviction in his complaint, according to the publicly available website maintained by DOCCS, Plaintiff was received into DOCCS custody on May 1, 2014, for second-degree attempted robbery, with an aggregate maximum sentence of seven years, with an earliest conditional release date of May 24, 2019. *See* http://nysdoccslookup.doccs.ny.gov (last visited January 5, 2017).

Plaintiff has organized the above events into six causes of action. *Id.* at ¶¶ 51-57. First, Plaintiff alleges Onondaga County had a policy and/or custom to coerce and threaten innocent people, particularly minorities such as Plaintiff, in a malicious and bad faith manner to maximize DA Fitzpatrick's conviction rate for media and political reasons. *Id.* at ¶ 50. Plaintiff further alleges Onondaga County, through the District Attorney's Office violated his rights to "be free of malicious prosecution" and violated *Brady v. Maryland*, 373 U.S. 80 (1963), by suppressing evidence favorable to an accused. *Id.* at ¶ 51.

**\*4** Second, Plaintiff alleges Detective Rether violated his rights to be free of malicious prosecution because she "initiated and continued a malicious prosecution against Plaintiff." *Id.* at ¶ 52. She also kept Plaintiff handcuffed for several hours even though Plaintiff proclaimed his innocence, thereby violating his rights under the Eighth and Fourteenth Amendments to be free

2017 WL 2805162

of cruel and unusual punishment. *Id.* Plaintiff claims he was denied due process of law because Detective Rether refused to call Plaintiff's parole officer, despite Plaintiff's repeated requests and her personal knowledge that Plaintiff was under his parole officer's supervision. *Id.*

Third, Plaintiff alleges DA Fitzpatrick violated his rights to be free of malicious prosecution, cruel and unusual punishment, and violations of due process because he is the supervisor of all Assistant District Attorneys, including ADA Manfredi, and was thus "personally involved" in the constitutional violations. *Id.* at ¶ 53.

Fourth, Plaintiff alleges ADA Manfredi violated Plaintiff's rights to be free of malicious prosecution because ADA Manfredi purposely suppressed and manipulated the original Key Bank ATM security video and pressured an innocent man to take a plea deal. *Id.* at ¶ 54. Plaintiff further alleges that as a result of ADA Manfredi's malicious prosecution, Plaintiff's sentence constitutes cruel and unusual punishment because he is actually innocent. *Id.*

Fifth, Plaintiff alleges Keller, while "appearing" to represent Plaintiff from about August 2013 to April 2014, was "simultaneously conspiring" with DA Fitzpatrick and ADA Manfredi. *Id.* at ¶ 55. In addition, Plaintiff claims Keller engaged in collusion and deceit, gave very bad advice, ignored Plaintiff's repeated requests to obtain clear color copies of the Key Bank ATM security video, outright lied to Plaintiff, coerced and threatened Plaintiff to plead guilty, and ignored Plaintiff's requests at sentencing in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the New York State Constitution, and New York Judiciary Laws. *Id.*

Lastly, Plaintiff alleges despite repeated attempts to Key Bank for a "clear color copy" of the May 31, 2013, ATM security video, "they" will not help, and "it's just not right" because Plaintiff needs a copy of the video to "prove [his] actual innocence." *Id.* at ¶ 57.

As relief, Plaintiff requests an immediate Order directing Key Bank, DA Fitzpatrick, and ADA Manfredi to provide Plaintiff and his mother with clear, color copies of the ATM security video, along with all security videos taken on May 31, 2013. *Id.* at ¶ 58. Plaintiff also seeks compensatory and punitive damages from Onondaga County, Detective Rether, DA Fitzpatrick, ADA Manfredi, and Keller in the amount of $32,290,000. *Id.* Plaintiff has submitted sixteen pages of exhibits in support of his complaint. (Dkt. No. 1-1.)

## IV. ANALYSIS

Plaintiff commenced this action for "deliberate and continuous violations of his rights pursuant to 42 U.S.C. § 1983 for conspiracy, malicious prosecution, ineffective assistance of counsel, and wrongful confinement[.]" (Dkt. No. 1 at ¶ 2.) Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**\*5** 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff "must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Section 1983 does not in and of itself create any substantive rights; rather the plaintiff must

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)
Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 63 of 88

2017 WL 2805162

demonstrate a violation of an independent federal constitutional or statutory right. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

### A. *Heck v. Humphrey*

Plaintiff's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477, (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. at 486-87 (emphasis in original); *see also Peterson v. Todd*, No. 5:12-CV-1371 (MAD/DEP), 2013 WL 2487253, at *4 (N.D.N.Y. June 7, 2013 [3] ) ("A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983.") (citation and internal quotation marks omitted).

[3]    Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Plaintiff's various claims regarding his false arrest, false imprisonment, malicious prosecution, conspiracy, violations of *Brady*, ineffective assistance of defense counsel, and sentencing represent challenges that fall squarely within the ambit of *Heck*. Were Plaintiff to succeed on any theory espoused by him, he would necessarily call into question the validity of the conviction he is challenging in this action. *See, e.g.*, *Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned); *Clemmons v. Albany Cnty. District Attorney's Office*, No. 1:16-CV-884 (TJM/CFH), 2016 WL 5793201, at *3 (N.D.N.Y. Aug. 25, 2016) (dismissing *Brady* claims on initial review as barred by *Heck*); *Peterson*, 2013 WL 2487253 (dismissing § 1983 claims of fraud and malicious prosecution against district attorney as barred by *Heck* where the plaintiff's continued incarceration suggested the inmate's conviction had not been overturned); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding the plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*).

Moreover, the fact that Plaintiff is seeking injunctive relief, as well as monetary relief, does not require a different finding. *See Clemmons*, 2016 WL 5793201, at *3 (citing *Loyd v. Cuomo*, No. 8:14-cv-829 (GLS/CFH), 2015 WL 3637409, at *2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the *Heck* rule applies 'no matter the relief sought (damages or equitable relief).' ") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and citing *Caswell v. Green*, 424 Fed.Appx. 44, 45 (2d Cir. 2011))).

 **\*6** Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated. [4]

[4]    A habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to seek relief from illegal confinement. *See Ingram v. Herrick*, 475 Fed.Appx. 793, 794 (2d Cir. 2012) (citing *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007)).

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2805162

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 64 of 88

In light of the above, the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*. [5]

[5]    Because the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*, no determination has been made as to the merits of Plaintiff's claims.

**B. Opportunity to Amend**

Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, for the reasons set forth above, leave to amend would be futile due to the bar imposed by *Heck*. "Disposition of the case on *Heck* grounds, however, warrants only dismissal *without* prejudice, because the suit may be reinstated should [the] plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (emphasis in original) (quoting *Heck*, 512 U.S. at 487). Accordingly, the Court recommends dismissing Plaintiff's § 1983 claims without prejudice.

**C. Claims Under the New York State Constitution and Laws**

Inasmuch as the Court is recommending that Plaintiff's federal claims be dismissed, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claims without prejudice. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**WHEREBY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDCE** as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**RECOMMENDED** that the District Court decline to exercise supplement jurisdiction over Plaintiff's state law claims; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2017 WL 2805162

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2805162

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 66 of 88

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2804944

2017 WL 2804944
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Erick GODLEY, Plaintiff,

v.

ONONDAGA COUNTY, a municipality; Ann Rether, Detective; William Fitzpatrick,
District Attorney; Michael Manfredi, Assistant District Attorney; Charles Keller,
Attorney; and Key Bank, in their individual and official capacities, Defendants.

5:16-cv-1419(DNH/TWD)
|
Signed 06/28/2017

**Attorneys and Law Firms**

ERICK GODLEY, 14-B-1321, Collins Correctional Facility, P.O. Box 340, Collins, New York 14034, Plaintiff pro se.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

 **\*1**  Pro se plaintiff Erick Godley brought this civil rights action pursuant to 42 U.S.C. § 1983. On January 6, 2017, the Honorable Therese Wiley Dancks, United States Magistrate Judge, advised by Report-Recommendation that plaintiff's complaint be dismissed without prejudice and that the exercise of supplemental jurisdiction be declined as to plaintiff's state law claims. Plaintiff filed timely objections to the Report-Recommendation.

Based upon a de novo review of the portions of the Report-Recommendation to which plaintiff objected, the Report-Recommendation is accepted and adopted in all respects. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice; and

2. Supplemental jurisdiction over plaintiff's state law claims is DECLINED and those claims are DISMISSED without prejudice.

The Clerk is directed to file judgment accordingly and close the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2804944

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 67 of 88
Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)
2022 WL 7666973

2022 WL 7666973
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Otis SIMMONS, Plaintiff,

v.

William J. FITZPATRICK, et al., Defendants.

5:22-CV-00757 (LEK/TWD)
|
Signed July 29, 2022

**Attorneys and Law Firms**

OTIS SIMMONS, Plaintiff, pro se, 05-B-2976, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**REPORT-RECOMMENDATION AND ORDER**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1**  Otis Simmons ("Plaintiff") initiated this action *pro se* on July 20, 2022, asserting claims under 42 U.S.C. § 1983 against William J. Fitzpatrick, Onondaga County District Attorney, ("DA Fitzpatrick") and the Hon. William Walsh, Supreme Court Judge ("Judge Walsh") (together, "Defendants"). (Dkt. No. 1.) Plaintiff, who is incarcerated and has not paid the filing fee for this action, seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) The Clerk sent Plaintiff's complaint and IFP application to the undersigned for initial review. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Plaintiff has also filed a motion for appointment of counsel. (Dkt. No. 4.)

For the reasons discussed below, Plaintiff's IFP application is granted for purposes of this review and the Court recommends *sua sponte* dismissing the complaint without prejudice and without leave to amend. Thus, Plaintiff's motion for appointment of counsel is denied without prejudice as moot.

**I. IFP APPLICATION**

Section 1915 of Title 28 of the United States Code "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." [1] *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.*; *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010).

---

[1]    Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. Based on that review, it appears Plaintiff had accumulated one strike for purposes of Section 1915(g) as of the date this action was commenced. *See Simmons v. Walsh*, No. 5:07-cv-012024 (DNH/GJD), ECF Dkt. No. 6 (*sua sponte* dismissing Plaintiff's complaint on initial review pursuant to 28 U.S.C. § 1915(e)(2)(b)).

2022 WL 7666973

<hr>

2      Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations
       are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

Upon review, Plaintiff has demonstrated economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted.

## II. STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed IFP and in civil cases where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints). When conducting this review, "the court shall dismiss the case at any time if the court determines ... the action is ... (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *accord id.* § 1915A(b)(1); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).[3] The Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

3      Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations
       are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

**\*2**   "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUMMARY OF THE COMPLAINT

Plaintiff, an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action under Section 1983 asserting claims arising from his Onondaga County criminal proceedings. (Dkt. No. 1.) Generally, Plaintiff alleges that on October 11, 2005, he was convicted of a crime he did not commit. *Id.* at 4.[4] Plaintiff complains certain "rulings" made by the trial court "made it impossible for [him] to prove his actual innocence." *Id.* To that end, the complaint states the:

> DNA report dated September 8, 2005, showed the hairs recovered from the crime scene did not possess
> sufficient individuality to be used as the basis for a positive personal/individuality identification. This
> was not sufficient to be convicted. When [Plaintiff] requested to challenge the DNA by an independent

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 69 of 88

Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)

2022 WL 7666973

lab, he was denied by the trial court. He appealed said judgment and that was denied too. These rulings
made it impossible for [Plaintiff] to prove his actual innocence.

*Id.* Liberally construed, Plaintiff alleges violations of his federal constitutional rights, with specific claims relative to his procedural due process rights guaranteed by the Fourteenth Amendment to present a defense and to receive a fair trial. *Id.* at 5. He further maintains his "actual innocence." *Id.* He brings these claims against DA Fitzpatrick, who prosecuted Plaintiff, and the "Now Deceased" (sic) Judge Walsh, who presided over Plaintiff's trial. *Id.* at 2; *see People v. Simmons*, 63 A.D.3d 1691. For relief, he seeks to "Rectify the Constitutional Errors." *Id.*

4    Plaintiff does not identify the crime for which he was convicted. According to the website maintained by DOCCS, Plaintiff has been confined to state prison since October 2005, having been convicted of first degree rape, first degree criminal sexual act, first degree sexual abuse, and third degree aggravated sexual abuse. *See* www.nysdocslookup.state.ny.us (DIN 05-B-2976) (last visited July 29, 2022). The Court takes judicial notice that Plaintiff's conviction was unanimously affirmed and the New York Court of Appeals denied leave to appeal. *See People v. Simmons*, 63 A.D.3d 1691 (N.Y. App. Div., 4th Dep't), *lv. denied*, 12 N.Y.3d 929 (N.Y. 2009). A review of Plaintiff's litigation history in this District reveals he also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the October 11, 2005, judgment of conviction in Onondaga County Court, which was denied and dismissed by Memorandum Decision and Order on August 23, 2010. *Simmons v. Graham*, No. 9:09-cv-00952 (GTS), ECF Dkt. No. 25. By Mandate of the United States Court of Appeals for the Second Circuit issued September 20, 2020, Plaintiff's subsequent application for leave to file a successive 28 U.S.C. § 2254 petition was denied. *Id.*, ECF Dkt. No. 33.

## IV. DISCUSSION

**\*3** Plaintiff purports to bring this action pursuant to Section 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Here, Plaintiff asks this Court to "Rectify the Constitutional Errors". (Dkt. No. 1 at 5.) However, a civil lawsuit may not be used to collaterally attack an existing criminal conviction. *See Heck v. Humphrey*, 512 U.S. 477 (1994). The United States Supreme Court explained that:

> a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (italics in original); *see, e.g.*, *Barzee v. Tyler*, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *10 (N.D.N.Y. May 3, 2022) ("To the extent plaintiff seeks declaratory and injunctive relief that would effectively invalidate his existing criminal conviction, such claims are barred by the *Heck* doctrine."), *report-recommendation adopted*, 2022 WL 2079084 (N.D.N.Y. June 9, 2022).

Stated differently, Plaintiff may not challenge the legality of his conviction in a Section 1983 action; he can only obtain such relief by bringing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. [5] *See Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of habeas corpus is sole remedy for prisoner seeking to challenge the fact or duration of his confinement); *see also Heck*, 512 U.S. at 481 ("habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 70 of 88

Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)

2022 WL 7666973

of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983"); *Godley v. Onondaga Cty.*, No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6, n.4 (N.D.N.Y. Jan. 6, 2017) ("A habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to seek relief from illegal confinement."), *report-recommendation adopted*, 2017 WL 2804944 (N.D.N.Y. June 28, 2017); *Simmons v. Walsh*, No. 5:07-CV-1024 (DNH/ GHL), ECF Dkt. No. 6 at 4 n.4 ("Plaintiff's request that he be released is not cognizable in an action pursuant to Section 1983.").

5     As noted, Plaintiff has already filed a habeas corpus petition in this Court, which was denied. *See Simmons v. Graham*, No. 9:09-cv-00952 (GTS), ECF Dkt. Nos. 25, 33.

Here, because success on Plaintiff's § 1983 claims would necessarily imply the invalidity of his conviction, and because Plaintiff's conviction has not been overturned or otherwise invalidated, *Heck*'s favorable termination rule bars this action. [6] *See Perez v. Cuomo*, No. 09-CV-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983."); *see, e.g.*, *Simmons v. Walsh*, No. 5:07-CV-1024 (DNH/GHL) (dismissing on initial review Plaintiff's 1983 claims to be "released and compensated" for violation of his constitutional rights and subsequent arrest as barred under *Heck*). Accordingly, the Court recommends dismissing the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). [7]

6     "Disposition of the case on *Heck* grounds ... warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by executive order, declared invalid ..., or called into question by a federal court's issuance of a writ of habeas corpus." *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).

7     Notably, even if *Heck* did not bar adjudication of Plaintiff's claims, given that he seeks to sue the judge who presided over his state court criminal case as well as the state prosecutor, such claims would also likely be barred by absolute judicial, prosecutorial, and Eleventh Amendment immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Montes v. O'Shea*, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *4 (N.D.N.Y. Apr. 6, 2021) ("Judicial immunity is immunity from suit, not just immunity from the assessment of damages."); *report-recommendation adopted*, 2021 WL 1758858 (N.D.N.Y. May 4, 2021); *Imbler v. Pachtman*, 424 U.S. 409, 437-38 (1976) (principles of judicial immunity from suit apply to prosecutors); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (when a district attorney decides whether to prosecute, he or she is representing the State not the county and is, thus, entitled to invoke Eleventh Amendment immunity); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (finding that absolute immunity protects a prosecutor "not only from liability but also from suit").

 **\*4**  Generally, district courts grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

Here, for the reasons set forth above, Plaintiff's Section 1983 claims are not cognizable because (1) Plaintiff is challenging the constitutionality of his criminal conviction itself; (2) he has not demonstrated the favorable termination of his criminal conviction pursuant to *Heck*; and (3) even if the *Heck* bar could be cured at a future date, Plaintiff's claims most likely would be barred by judicial, prosecutorial, and Eleventh Amendment immunity. Thus, the Court recommends dismissal without leave to amend.


## V. MOTION FOR APPOINTMENT OF COUNSEL

Although civil litigants do not have a constitutional right to the appointment of counsel, "[t]he court may request an attorney to represent any person unable to afford counsel." *See* 28 U.S.C. § 1915(e)(1); *see also Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."). A court's power to request such assistance "must be understood to guarantee indigents meaningful access to the courts as required by the Constitution." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 71 of 88

Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)

2022 WL 7666973

"In deciding whether to appoint counsel ... the district judge should first determine whether the indigent's position seems likely to be of substance." *Hodge*, 802 F.2d at 61; *see also Dolan v. Connolly*, 794 F.3d 290, 296-97 (2d Cir. 2015). "If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61-62; *see also Dolan*, 794 F.3d at 296-97.

Here, in light of the foregoing recommendations, Plaintiff's motion for appointment of counsel (Dkt. No. 4) is denied without prejudice as moot.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be *sua sponte* **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and **WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE AS MOOT**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a). [8]

[8]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

**\*5  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 7666973

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)

2022 WL 7508816

2022 WL 7508816
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Otis SIMMONS, Plaintiff,

v.

William J. FITZPATRICK, et al., Defendants.

5:22-CV-00757 (LEK/TWD)
|
Signed October 13, 2022

**Attorneys and Law Firms**

Otis Simmons, Elmira, NY, Pro Se.

John E. Heisler, Jr., Onondaga County Department of Law, John H. Mulroy Civic Center, Syracuse, NY, for Defendant William J. Fitzpatrick.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1** On July 20, 2022, pro se plaintiff Otis Simmons commenced this action, asserting claims under 42 U.S.C. § 1983 against William J. Fitzpatrick, Onondaga County District Attorney, and the Honorable William Wash, New York Supreme Court Judge (together, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff then sought leave to proceed in forma pauperis ("IFP"), Dkt. No. 2 ("IFP Application"), and filed a motion for appointment of counsel, Dkt. No. 4. On July 29, 2022, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, granted Plaintiff's IFP Application for the purposes of reviewing the sufficiency of his Complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Dkt. No. 5 ("Report-Recommendation") at 2. The Magistrate Judge also recommended that the Court sua sponte dismiss the Complaint without prejudice and without leave to amend, and deny Plaintiff's motion for appointment of counsel without prejudice as moot. Id. No party has objected to the Report-Recommendation. See generally Dkt. For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review "does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002).

However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need only review that aspect of a report-recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."); New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When

Case 5:25-cv-00181-AMN-TWD   Document 9   Filed 05/27/25   Page 73 of 88

Simmons v. Fitzpatrick, Not Reported in Fed. Supp. (2022)
2022 WL 7508816

a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." (quoting <u>Molefe v. KLM Royal Dutch Airlines</u>, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." <u>Rivera v. Federal Bureau of Prisons</u>, 368 F.Supp.3d 741, 744 (S.D.N.Y. 2019). A district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. <u>See</u> <u>Hubbard v. Kelley</u>, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (internal quotation marks omitted)). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

**\*2**  No party objected to the Report-Recommendation "[w]ithin fourteen days after being served with a copy" of it. 28 U.S.C. § 636(b)(1)(C). Accordingly, the Court reviews the Report-Recommendation for clear error. Having found none, the Court approves and adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 5) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED without prejudice** and **without leave to amend**; and it is further

**ORDERED**, that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice as moot**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2022 WL 7508816

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 74 of 88
Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)
2024 WL 2804839

2024 WL 2804839
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric LYNCH, Plaintiff,

v.

COUNTY OF HERKIMER, et al., Defendants.

6:23-cv-1454 (GTS/TWD)
|
Signed February 14, 2024

**Attorneys and Law Firms**

ERIC LYNCH, Plaintiff, pro se, 18-B-0755, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Eric Lynch ("Plaintiff") alleging Darryl Lucas, Russell Fetterman, Matthew Jacoby, the State of New York, Herkimer County District Attorney Jeffrey S. Carpenter, and the County of Herkimer violated his civil rights. Dkt. No. 1. Plaintiff, who was in the custody of New York State Department of Corrections and Community Supervision ("DOCCS") at the Elmira Correctional Facility at the time of filing, has not paid the filing fee for this action and seeks leave to proceed in forma pauperis ("IFP"). Dkt. Nos. 4, 8.

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need. Dkt. No. 8. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, he is granted permission to proceed IFP. [1]

[1]    Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. BACKGROUND

Plaintiff's claims arise from events which began on November 25, 2008. Dkt. No. 1 at 8-10. [2] Plaintiff avers Defendants Jacoby and Fetterman: trespassed onto Plaintiff's property, located in Middleville, New York; opened Plaintiff's locked Ford Econoline van, located on said property; conducted a search of the van, without a warrant; and seized "plaintiff's legaly owned 30.06 rifle which was safely stored inside plaintiff's locked vehicle ...." *Id.* at 9. [3] Later the same day, Plaintiff reported his rifle had been

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 75 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

stolen; Fetterman informed Plaintiff he had taken the rifle; Plaintiff requested Fetterman return the rifle; and Fetterman returned Plaintiff's rifle and wrote plaintiff tickets for failing to report a take and failing to properly fill a tag for a deer management permit. *Id.* at 9-10.

2    Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

3    Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On February 25, 2009, Plaintiff filed "a Notice of Claim ... against the State of New York setting forth the improper procedures employed by defendant's FETTERMAN and LUCAS." *Id.* at 10. Thereafter, "In retaliation ... defendant FETTERMAN commenced and engaged in a scheme to harass plaintiff and members of his family." *Id.* at 11.

 **\*2**  On April 29, 2009, Fetterman issued Plaintiff a ticket for making a false written statement. *Id.* at 15. Plaintiff has since requested "either a trial or dismissal of the charge ..." however, as of the time of filing, the charge had not been disposed of. *Id.*

On May 8, 2009, an unnamed New York State Department of Environmental Conservation ("DEC") "Officer called the plaintiff on his cellular phone and informed him that they had a warrant for his arrest." *Id.* at 11. "Plaintiff was directed to meet defendant(s) FETTERMAN and LUCAS in the parking lot of the Town of Fairfield Court," and when he arrived, he "demanded to see the alleged arrest warrant." *Id.* at 11-12. Defendant Lucas:

> [G]ot extremely irritated and begin yelling and swearing at the plaintiff ... grabbed plaintiff, manhandled plaintiff, and placed handcuffs on the plaintiff ... grabbed the plaintiff by his shirt, lifted him off of the ground, and then slammed the plaintiffs body onto the hood of the Department of Environmental Conservation SUV ... Plaintiff was then dragged to defendant FETTERMAN's SUV and thrown into the backseat by defendant LUCAS.

*Id.* at 12-13. Plaintiff further asserted "Defendant FETTERMAN stood by watching while plaintiff was being physically assaulted by defendant LUCAS." *Id.* at 13. Next, Defendant Fetterman transported Plaintiff to the Town of Manheim Court where he appeared before "Justice Thompson" who "ordered the defendant(s) to release the plaintiff immediately ... [and] never bring the plaintiff back into his court." *Id.* at 14.

The Court takes judicial notice of an action Plaintiff commenced on November 21, 2012. *See generally, Lynch v. New York* (hereinafter, "*Lynch* I"), No. 6:12-CV-1757 (DNH/DEP), 2013 WL 4425129, at *1 (N.D.N.Y. Aug. 14, 2013). Plaintiff brought "a total of sixteen causes of action arising from ten separate interactions with New York State Police and/or DEC officers between November 2008 and October 2012.... pursuant to 42 U.S.C. § 1983 ...." *Id.* District Judge David N. Hurd dismissed Plaintiff's complaint in its entirety. *See id.* at \*4.

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

**\*3**  Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotations and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. DISCUSSION

Plaintiff's complaint asserts the following causes of action: (1) an excessive force claim against Defendant Lucas (Dkt. No. 1 at 15-16); (2) a failure to intervene claim against Defendant Fetterman (Dkt. No. 1 at 17); (3) a deliberate indifference claim against Defendants Lucas and Fetterman (Dkt. No. 1 at 18); (4) an illegal search and seizure claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 19-20); (5) a Second Amendment violation claim against Defendants Jacoby and Fetterman (Dkt. No. 1 at 20); (6) a state liability claim against the State of New York (Dkt. No. 1 at 20-23); (7) a claim of Due Process violations against Defendant Carpenter (Dkt. No. 1 at 23-24); and (8) a *Monell* claim against the County of Herkimer (Dkt. No. 1 at 24-25). [4]  For the reasons explained below, all of Plaintiff's contentions fail to state a claim upon which relief may be granted; therefore, dismissal of the complaint is warranted.

[4]  *See generally, Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### A. *Heck v. Humphrey*

As previously stated, Plaintiff is currently in DOCCS custody. The Court takes judicial notice of DOCCS public administrative records stating Plaintiff is incarcerated on convictions for burglary in the first degree, attempted burglary in the first degree, and criminal mischief in the second degree. [5]

[5]  *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on February 14, 2024); *see also, e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 77 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

lookup information ...."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

**\*4** While it is not clear in Plaintiff's complaint what relationship, if any, these convictions have to his claims in the instant matter, to be sure, civil lawsuits may not be used to collaterally attack criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus ....

*Id.* Therefore, to the extent Plaintiff's claims could be construed as calling into question the validity of any conviction which has not been reversed, expunged, declared invalid, or called into question by a relevant authority, his claims are barred by *Heck*. *See, e.g.*, *Hines v. Giacona*, No. 5:18-CV-0002 (GTS/TWD), 2018 WL 4610675, at *3 (N.D.N.Y. Apr. 2, 2018) (concluding the plaintiff's § 1983 claims which "would necessarily call into question the validity of his conviction" was barred by *Heck v. Humphrey* "unless and until such time as Plaintiff's conviction is overturned or his sentence invalidated.") (citations omitted), *report and recommendation adopted*, 2018 WL 3046513 (N.D.N.Y. June 20, 2018).

**B. Plaintiff's Claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York Are Barred Under the Doctrine of *Res Judicata***

In *Lynch* I, Plaintiff alleged "on November 25, 2008 ... [DEC] Officers Russell F. Fetterman and Matthew Jacoby ... used force to pry open the door of [Plaintiff's] truck and seize a firearm, all without a search warrant or probable cause." *Lynch* I, Dkt. No. 1 at 2. Plaintiff further asserted:

> [O]n May 9, 2009 ... Officer Fetterman telephoned the Plaintiff and directed him to appear in the parking lot across the street from the Village Courthouse in Middleville, NY as there was purportedly a warrant for the Plaintiff's arrest .... Plaintiff met Officer Fetterman and one DEC Officer Darryl Lucas in the parking lot.... Plaintiff was physically assaulted .... Officer Fetterman then drove Plaintiff to the Town of Manheim Court .... [where] the officers could not produce a warrant .... The justice on the bench ... then released Plaintiff in the absence of any charge or accusatory instruments.

*Id.* at 3. The complaint included various claims for civil rights violations under both federal and state law, including "violations of the Fourth and Fourteenth Amendments to the United States Constitution and state tort violations of assault, battery, false arrest, unlawful search and seizure and intentional infliction of emotional distress," as well as "claims of negligent supervision of police and uniformed law enforcement officers; malicious/reckless/negligent execution of police procedures within the New York State Department of Environmental Conservation and the New York State Police." *Id.* at 6-7.

On June 12, 2013, Defendants Fetterman, Jacoby, Lucas, and the State of New York filed a motion to dismiss the complaint for failure to state a claim. *See Lynch* I, Dkt. No. 11. Plaintiff filed no opposition to Defendants' motion and, following a hearing, Judge Hurd granted the Defendants' motion and dismissed the complaint in its entirety on August 14, 2013. *Lynch* I, 2013 WL 4425129, at *1, 4. As relevant here, Judge Hurd concluded the State of New York was immune from liability under the

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 78 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

Eleventh Amendment and Plaintiff's § 1983 claims related to the November 25, 2008, and May 9, 2009, incidents were time barred. *See id.* at 2 (first citing *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009) in support of the proposition that state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogated said immunity; then citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) in support of the proposition that the statute of limitations applicable to claims brought under § 1983 in New York is three years).

**\*5** "The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine precludes a party from asserting a claim in subsequent litigation where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285. "A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed." *Vance v. ACCO Brands, Corp.*, No. 6:17-CV-0957 (GTS/TWD), 2017 WL 8751936, at \*5 (N.D.N.Y. Nov. 1, 2017) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)) (additional citations omitted), *report and recommendation adopted*, 2018 WL 1631312 (N.D.N.Y. Apr. 2, 2018), *aff'd*, No. 18-1258, 2018 WL 5603578 (2d Cir. Oct. 3, 2018).

In this case, *res judicata* bars Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York. First, *Lynch* I was adjudicated on the merits because "a dismissal for failure to state a claim operates as a final judgment on the merits ...." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (internal quotations and citation omitted). Furthermore, Plaintiff's prior action named the State of New York, Lucas, Fetterman, and Jacoby as Defendants. *See Lynch* I, Dkt. No. 1 at 1.

Finally, Plaintiff's claims here concerning Fetterman, Jacoby, and Lucas' alleged conduct were, or could have been, raised in *Lynch* I. *See Williams v. Perry*, 229 F.3d 1136 (2d Cir. 2000) (Summary Order) (explaining the plaintiff's "current ... claim could have been raised in [the prior action] if it is part of the same 'nucleus of operative fact' or involves the same factual predicate as the claims raised in" the prior action) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)). Plaintiff's claims in both actions concerned: (1) Defendant Jacoby and Fetterman's alleged actions of entering Plaintiff's Middleville property and taking possession of a firearm from Plaintiff's vehicle on November 25, 2008, *compare* Dkt. No. 1 at 8-10 *with Lynch* I, Dkt. No. 1 at 2-3; (2) Defendant Fetterman and Lucas' alleged actions in informing Plaintiff they had a warrant for his arrest, causing Plaintiff bodily harm, and transporting Plaintiff to the Town of Manheim Court without regard to Plaintiff's injuries on May 8 or 9, 2009, *compare* Dkt. No. 1 at 11-14 *with Lynch* I, Dkt. No. 1 at 3;[6] and (3) the State of New York's alleged actions and omissions which lead to, *inter alia*, the aforementioned two incidents, *compare* Dkt. No. 1 at 20-23 *with Lynch* I, Dkt. No. 1 at 8. Because Plaintiff's claims in both complaints are derived from the same facts, even those claims which were not raised in *Lynch* I *could have been*, therefore, the claims are barred here. *L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (holding the plaintiff's claims in a second action were "plainly barred by *res judicata*" explaining, plaintiff's "new claims are *based on different legal theories rather than different facts* and, accordingly, could have been raised in the original complaint.") (emphasis added).

[6]   The Court notes that, in the instant action, Plaintiff states this incident occurred "on May 8th of 2009," Dkt. No. 1 at 11, while, by contrast, Plaintiff previously alleged this "incident occurred on May 9, 2009," *Lynch* I, Dkt. No. 1 at 3. However, given the similarities between both accounts and the mere one day difference in date, the Court has no doubt both accounts refer to the same incident.

**\*6** In sum, *res judicata* precludes all of Plaintiff's current claims against Defendants Lucas, Fetterman, Jacoby, and the State of New York. "When an *informa pauperis* action is *res judicata*, it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Orr v. U.S. Air Force*, No. 6:15-CV-1132 (GTS/TWD), 2015 WL 6671559, at \*5 (N.D.N.Y. Oct. 30, 2015) (internal quotations and citation omitted) (dismissing plaintiff's complaint pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that his claim was barred under the doctrine of *res judicata*).

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 79 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

Accordingly, the Court recommends Plaintiff's first, second, third, fourth, fifth, and sixth causes of action be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). [7]

[7]    In any event, Plaintiff's claims against Defendants Lucas, Fetterman, and Jacoby, and the State of New York, arising from incidents which occurred in 2008 and 2009, are time barred by the three year statute of limitations applicable to § 1983 claims in New York. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under § ... 1983 in New York is three years.").

### C. Plaintiff's Claim Against Defendant Carpenter [8]

[8]    While it is not clear when Plaintiff was charged with making a false written statement or when he avers the Herkimer County District Attorney allegedly violated his constitutional rights, the Court takes judicial notice that Jeffrey Carpenter is the current Herkimer County District Attorney and John H. Crandall was the Herkimer County District Attorney prior to Carpenter's 2012 election. *See generally*, https://history.nycourts.gov/figure/district-attorneys-herkimer-county/ (site last visited on February 14, 2024).

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " *Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), as well as deciding when to drop charges, *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *see also Flagler*, 663 F.3d at 547 ("the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).

**\*7** Here, Plaintiff accuses the Herkimer County District Attorney ("DA") of due process violations, claiming the DA:

> [V]iolated plaintiff's right to a speedy trial ... violated plaintiff's rights as guaranteed by the U.S. Constitution by failing to dispose of the charge of FALSE WRITTEN STATEMENT, 201.45 even after the statute of limitations had expired ... [and] violated plaintiffs rights by allowing the open charge of FALSE WRITTEN STATEMENT, PL 201.45 to be used against plaintiff in a PRE-SENTENCING INVESTIGATION REPORT for the arrest of plaintiff on March 9th of 2017 even though he knew that the statute of limitations had expired years prior.

Dkt. No. 1 at 23-24. Plaintiff's allegations fall squarely within the scope of prosecutorial immunity. *See Phillips v. Proud*, No. 5:18-CV-0029 (LEK/ATB), 2018 WL 3195094, at \* 4 (N.D.N.Y. Mar. 14, 2018) (concluding the plaintiff's claim that an ADA "did not dismiss the charges in a timely manner, rather, he let the speedy trial clock run" did "not defeat prosecutorial

Case 5:25-cv-00181-AMN-TWD    Document 9    Filed 05/27/25    Page 80 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

immunity," irrespective of the ADA's motivation or the resulting damage), *report and recommendation adopted*, 2018 WL 3193198 (N.D.N.Y. Jun. 28, 2018); *Corley v. Wittner*, 811 F. App'x 62, 63 (2d Cir. 2020) (Summary Order) ("The district court correctly held that the state court judge and prosecutors were absolutely immune from suit as to [the plaintiff]'s speedy trial" claim) (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (additional citations omitted); *Taylor*, 640 F.2d at 452 ("the failure to drop charges ... ha[s] been held to be prosecutorial activit[y] for which absolute immunity applies.") (citation omitted). Therefore, Plaintiff's claim against the DA in his individual capacity is barred.

Next, under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009). "Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

"When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.' " *D'Alessandro*, 713 F. App'x 1 at 8 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (additional citations omitted). "Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)); *see also, e.g., Gentry v. New York*, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (explaining, "the claims against [assistant district attorneys], in their official capacities, are effectively claims against the State of New York" and recommending dismissal of said claims), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021); *Rich v. New York*, No. 1:21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.") (citation omitted). Therefore, Plaintiff's claim against the DA in his official capacity is barred.

*8 In sum, both prosecutorial and Eleventh Amendment immunity proscribe Plaintiff's claim against the DA. Accordingly, the Court recommends Plaintiff's seventh cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See, e.g., Gosier v. Oneida Cnty. Dist. Attorney's Office*, No. 6:23-CV-1118 (DNH/TWD), 2023 WL 6880352, at *1 (N.D.N.Y. Oct. 18, 2023) (recommending dismissal of the plaintiff's § 1983 claims against the County District Attorney's Office and District Attorneys pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A), *report and recommendation adopted*, 2023 WL 7220751 (N.D.N.Y. Nov. 2, 2023).

### D. Plaintiff's Claim Against the County of Herkimer

Plaintiff's claim against the County of Herkimer appears to arise from a charge of making a punishable false written statement, in violation of N.Y. PENAL LAW ("P.L.") § 210.45. Plaintiff asserts only the following facts with respect to the charge:

• On April 29th of 2009 defendant FETTERMAN issued the plaintiff a ticket for FALSE WRITTEN STATEMENT.

• For years the plaintiff has requested either a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.

• Defendant CARPENTER has continually ignored plaintiff's request for a trial or dismissal of the charge of MAKING A FALSE WRITTEN STATEMENT.

• All claims contained within[ ]this complaint fall within the Statute of Limitations due to the fact that the charge of MAKING A FALSE WRITTEN STATEMENT, CPL 210.45, remains an open charge.

Case 5:25-cv-00181-AMN-TWD Document 9 Filed 05/27/25 Page 81 of 88

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)

2024 WL 2804839

Dkt. No. 1 at 15. As explained above, Plaintiff avers the DA's failure to dispose of the charge violated his due process rights and the County's failure to train the DA about "the laws and rights of an individual to a speedy trial" and "the laws and rules regarding statutes of limitation on criminal charges" violated his constitutional rights. *See id.* at 24-25.

To the extent Plaintiff's claim against the County concerns an ongoing state court criminal proceeding, this Court may not intervene. *Hicks v. Miranda* and *Younger v. Harris* "establish that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of great and immediate harm." *Peralta v. Leavitt*, 56 F. App'x 534, 535 (2d Cir. 2003) (affirming the District Court's conclusion "that, if the criminal proceedings against [the plaintiff] were still ongoing, the Complaint [brought under to 42 U.S.C. § 1983] must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.") (citing *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Younger v. Harris*, 401 U.S. 37 (1971)); *see also Singleton v. State of N.Y.*, No. 1:98-CV-0414, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) (dismissing the plaintiff's § 1983 claim for failure to state a claim where the charges against him were still pending in state court, explaining, "[i]t is well-settled that federal courts cannot intervene in ongoing criminal proceedings except in the most extraordinary circumstances and upon a clear showing of both great and immediate harm.") (citations omitted); *Anderson v. Chou*, No. 1:06-CV-3563, 2006 WL 2620424, at *2 (E.D.N.Y. Sept. 13, 2006) (abstaining from reaching the plaintiff's § 1983 claim regarding an examination in his pending state court criminal case and dismissing the complaint in its entirety). Here, Plaintiff has failed to allege, much less clearly show, both great and immediate harm would result from this Court's failure to intervene.

**\*9** Accordingly, the Court recommends Plaintiff's eighth cause of action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). [9]

[9]   For the reasons explained above, to the extent Plaintiff's "*Monell*" claim against Herkimer County seeks to attack a conviction on the charge of making a false written statement, any such argument is barred by *Heck v. Humphrey*.

### E. Opportunity to Amend

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problems with plaintiff's causes of action are substantive such that better pleading will not cure them. *See Cuoco*, 222 F.3d at 112.

With due regard to Plaintiff's status as a *pro se* litigant, the defects with respect to Plaintiff's claims against Defendants Lucas, Fetterman, Jacoby, the State of New York, and Carpenter are such that any amendment would be futile. *See, e.g., Orr*, 2015 WL 6671559, at *5 (recommending the plaintiff's complaint barred by *res judicata* "be dismissed with prejudice ...."); *Johnson v. Bieling*, No. 5:20-CV-1124 (GTS/ML), 2021 WL 1841470, at *5 (N.D.N.Y. Jan. 6, 2021) (recommending dismissal of the plaintiff's untimely complaints "with prejudice."), *report and recommendation adopted*, 2021 WL 1840591 (N.D.N.Y. May 7, 2021); *Gosier*, 2023 WL 6880352, at *4 ("[B]ecause Plaintiff's Section 1983 against [the DA's office and various DAs] are barred under the doctrines of Eleventh Amendment immunity and prosecutorial immunity, leave to amend would be futile. Therefore, the Court recommends the complaint be dismissed without leave to amend."). Accordingly, the Court recommends Plaintiff's claims against these Defendants be dismissed without leave to amend.

Moreover, while Plaintiff's apparently pending criminal case requires the Court abstain from hearing his *Monell* claim against Herkimer County, the impediment is one which may be cured; therefore, the Court recommends said claim be dismissed with leave to amend. *See, e.g., Anderson*, 2006 WL 2620424, at *3 (dismissing the plaintiff's claim related to his pending criminal case "without prejudice to filing a new complaint in the appropriate district court upon the conclusion of the state criminal proceedings."). However, the Court expresses no opinion as to the timeliness or legal viability of a *Monell* claim based on the facts as stated by Plaintiff herein. Further, Plaintiff must not reassert in any amended complaint claims that the Court has dismissed with prejudice.

Lynch v. County of Herkimer, Not Reported in Fed. Supp. (2024)
2024 WL 2804839

## VI. CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges claims against (1) Defendant Lucas, (2) Defendant Fetterman, (3) Defendant Jacoby, (4) Defendant State of New York, and (5) Defendant Carpenter; and it is further

 **\*10  RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent it alleges a claim against the County of Herkimer and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[10]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2804839

---

2024 WL 2804527
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric LYNCH, Plaintiff,

v.

COUNTY OF HERKIMER; Jeffrey S. Carpenter, Herkimer County District Atty.; Darryl Lucas,
Environmental Conservation Police Officer; Russell Fetterman, Environmental Conservation Police
Officer; Matthew Jacoby, Environmental Conservation Police Lt.; and State of New York, Defendants.

6:23-CV-1454 (GTS/DJS)
|
Signed May 31, 2024

**Attorneys and Law Firms**

ERIC LYNCH, 18-B-0755, Plaintiff, Pro Se, Elmira Correctional Facility, P.O. Box 500, Elmira, New York 14902.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil rights action filed by Scott Phillip Lewis ("Plaintiff") against the State of
New York, the County of Herkimer and the four above-captioned individuals ("Defendants"), is United States Magistrate Judge
Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's claims against Defendant Lucas, Defendant
Fetterman, Defendant Jacoby, Defendant Carpenter and Defendant State of New York be dismissed without leave to amend,
and that Plaintiff's claims against Defendant County of Herkimer be dismissed with leave to amend. (Dkt. No. 9.) Plaintiff has
not filed an Objection to the Report-Recommendation and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation,
the Court can find no clear error in the Report-Recommendation:[1] Magistrate Judge Dancks employed the proper standards,
accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted
and adopted in its entirety for the reasons set forth therein.

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear
       error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error"
       review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the
       recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995)
       (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection
       is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 9) is **ACCEPTED** and **ADOPTED** in its
entirety; and it is further

**ORDERED** that Plaintiff's claims against Defendant Lucas, Defendant Fetterman, Defendant Jacoby, Defendant Carpenter and
Defendant State of New York are **DISMISSED with prejudice**; and it is further

**ORDERED** that the remaining claims in Plaintiff's Complaint (Dkt. No. 1) – i.e., his claims against Defendant County of Herkimer – **shall be DISMISSED with prejudice** and without further Order of this Court **UNLESS**, within **THIRTY (30) DAYS** of entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff wish to file an Amended Complaint in this matter, the Amended Complaint must be a complete pleading which will supercede and replace his original Complaint in all respects, and may not reassert any claims that have been dismissed with prejudice; and it is further

**ORDERED** that, should Plaintiff file a timely Amended Complaint, the Amended Complaint be returned to Magistrate Judge Dancks for further review pursuant to 28 U.S.C. § 1915.

**All Citations**

Slip Copy, 2024 WL 2804527

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 967059
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barton DePAUL, Plaintiff,
v.
James HELMER, Defendant.

No. 6:10–CV–00813 (LEK–ATB).
|
March 21, 2012.

**Attorneys and Law Firms**

Barton Depaul, Beacon, NY, pro se.

David H. Walsh, IV, Barth, Sullivan Law Firm, Syracuse, NY, for Defendant.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE E. KAHN, District Judge.

## I. INTRODUCTION

 **\*1**  Plaintiff Barton DePaul ("Plaintiff" or "DePaul"), proceeding *pro se* and *in forma pauperis,* commenced this § 1983 civil rights action by filing a Complaint on July 6, 2010. Dkt. No. 1 ("Complaint"). Plaintiff then filed an Amended Complaint on July 28, 2010. Dkt. No. 8 ("Amended Complaint"). Defendant James Helmer, an investigator with the Oneida County District Attorney's Office ("Defendant" or "Investigator Helmer") filed an Answer to the Complaint on August 9, 2010. Dkt. No. 12 ("Answer"). On April 6, 2011, United States Magistrate Judge Andrew T. Baxter ordered Defendant to file an answer or otherwise respond to Plaintiff's Amended Complaint by April 30, 2011. Dkt. No. 31. Presently before the Court is Defendant's Motion to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b) (6). [1] Dkt. No. 35–1 ("Motion"). Plaintiff filed a Response in opposition to Defendant's Motion, and Defendant filed a Reply. Dkt. Nos. 42 ("Response"), 43 ("Reply").

---

[1]   The Court notes that Plaintiff's Amended Complaint was filed before Defendant filed his Answer to Plaintiff's initial Complaint, and well before Defendant filed the present Motion. Absent leave of the Court, Defendant's Motion would have been well beyond the time limits for responsive pleadings prescribed by Fed.R.Civ.P. 12(a). However, this time limit may be extended by Court order, *see* Fed.R.Civ.P. 6(b), and Magistrate Judge Baxter directed Defendant to respond by Order filed April 6, 2011. Dkt. No. 31. In any event, because Plaintiff is proceeding *in forma pauperis,* 28 U.S .C. § 1915(e)(2)(B) directs the Court to "dismiss the case at any time if the court determines that the action ... fails to state a claim on which relief may be granted."

## II. BACKGROUND

Plaintiff claims that on May 19, 2010, Investigator Helmer ordered his arrest "on charges of no merit." Am. Compl. at 4. Plaintiff alleges that he had been "helping [Investigator] Helmer on a cold murder case." *Id.* at 5. Plaintiff appears to claim that Helmer "falsely accused" Plaintiff of pulling a "B–B gun" on him, and "lied to get [him] indicted." Dkt. No. 8–1 ("Am.Compl.Ex.1") at 1. Plaintiff also alleges that his Fourteenth Amendment rights were violated by Investigator Helmer "because he lied on court minutes trying to bury me in prison." Am. Compl. at 5. Plaintiff also alleges that Investigator Helmer released information about

Plaintiff's cooperation with the District Attorney's Office to the media, thereby "label[ing him] as a rat informant ... and now fighting to get [him] killed." *Id.* Plaintiff alleges that this led to a fight with another inmate, resulting in injuries to Plaintiff. *Id.*

Plaintiff submitted the Oneida County grand jury indictment that arose out of the "B–B gun" incident, in which Plaintiff was charged with third degree criminal possession of a weapon, second degree menacing, and second degree aggravated harassment. *Id.* at 7; Am. Compl. Ex. 1 at 5. The indictment states that Plaintiff "pointed what appeared to be a pistol or other firearm at Oneida County District Attorney's Chief Investigator James Helmer and stated, 'Give me all your money, you [expletive].' " Am. Compl. at 7. However, Plaintiff claims that he "was just bustin chops. After [eighteen] months of James Helmer doing it to me I thought I could do it to James." Am. Compl. Ex. 1 at 1.

The Court takes judicial notice of Plaintiff's conviction arising out of this arrest and indictment, as well as his continued incarceration at Fishkill Correctional Facility. [2] *See Wingate v. Gives,* No. 05 Civ. 1872, 2008 WL 5649089, at *3 n. 7 (S.D.N.Y. Apr.13, 2008) (taking judicial notice of conviction); *Williams v. City of New York,* No. 07 Civ. 3764, 2008 WL 3247813, at *2 (S.D.N.Y. Aug.7, 2008) (taking judicial notice of continued incarceration).

[2]  This information was obtained on March 19, 2012 via the New York State Department of Corrections and Community Supervision Inmate Population Information Search page, located at http://nysdoccslookup.doccs.ny.gov/.

## III. STANDARD OF REVIEW

**\*2** In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1249. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Finally, the Court is mindful of the principle that a *pro se* litigant's papers are to be construed liberally. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citations omitted). Accordingly, the Court must interpret Plaintiff's submissions to "raise the strongest arguments that they suggest." *Dias v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (internal quotation and citation omitted). At the same time, the Court is "not obliged to reconcile [a *pro se]* plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Koulkina v. City of New York,* 559 F.Supp.2d 300, 314 (S.D.N.Y.2008) (quotation and citations omitted). Where such a contradiction exists, the *pro se* plaintiff's allegations "are insufficient to defeat a motion to dismiss." *Id.*

## IV. DISCUSSION

Reading Plaintiff's Amended Complaint liberally, Plaintiff appears to assert § 1983 causes of action for: (1) false arrest; (2) denial of the right to a fair trial; and (3) conspiracy. The Court addresses each of these claims in turn.

### A. False Arrest

Plaintiff claims that Defendant ordered his arrest "on charges of no merit." Am. Compl. at 4. "To state a claim under § 1983 for false arrest, the plaintiff must show a violation of his Fourth Amendment right to remain free from unreasonable seizures,

'which includes the right to remain free from arrest absent probable cause.' " *Barmapov v. Barry,* No. 09–CV–3390, 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006)). "The existence of probable cause to arrest ... 'is a complete defense to an action for false arrest.' " *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *see also Cameron v. Wise,* No. 09 Civ. 967, 2011 WL 1496341, at *5 (S.D.N.Y. Apr. 20, 2011). "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986). Because Plaintiff was subsequently convicted, there was probable cause for his arrest and his claim for false arrest is insufficient as a matter of law.

### B. Right to a Fair Trial

**\*3** Plaintiff's claim that Defendant lied in court to secure his conviction—thereby violating his Fourteenth Amendment right to a fair trial—is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "if a judgment in favor of the plaintiff [in a § 1983 suit] would necessarily imply the invalidity of his conviction or sentence[,] the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Here, Plaintiff's claim that Defendant's testimony was perjured would clearly implicate the validity of his conviction. *See, e.g., Perez v. Cuomo,* No. 09–CV–1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.") (citations and quotations omitted). As Plaintiff has not demonstrated that his conviction has already been invalidated, and as the Court's inquiry confirms that he is still incarcerated on these charges, Plaintiff's fair trial claim is dismissed pursuant to *Heck.* [3]

[3] Such dismissal is without prejudice, as "the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) (citing *Heck,* 512 U.S. at 487).

### C. Conspiracy

Plaintiff alleges that Investigator Helmer disclosed to the media that Plaintiff was acting as an informant for the District Attorney's Office, and that Plaintiff was attacked by another inmate as a result. Reading the Amended Complaint liberally, Plaintiff appears to assert that Investigator Helmer conspired with a private actor to cause him harm. To state a claim of conspiracy pursuant to § 1983, a plaintiff must sufficiently allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that and causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Here, Plaintiff fails to state a plausible claim for relief. Beyond mere conclusory statements, he pleads no facts that support even an inference that Defendant was working in concert to cause harm to Plaintiff. [4] Accordingly, this claim is dismissed for failure to state a claim upon which relief may be granted.

[4] The Court notes that Plaintiff brought a similar claim against a different defendant in another civil action in this District. *See DePaul v. McNamara,* No. 6:10–CV–1123, Dkt. No. 1 (N.D.N.Y. filed Sept. 20, 2010). There, he claimed that District Attorney Scott McNamara had conspired with Investigator Helmer "for Plaintiff's murder by wrongfully disclosing that Plaintiff 'worked for' the District Attorney's Office apparently as an informant." *Id.,* Dkt. No. 7 (report-recommendation). This claim was found to be implausible, and dismissed for failure to state a claim upon which relief may be granted. *Id.,* Dkt. No. 8 (adopting report-recommendation).

The Court notes that a *pro se* action should generally not be dismissed without "granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugo,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. *Id.* Further, leave may be denied where a plaintiff has already amended his or her complaint once. *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119,

2012 WL 967059

at *2 (E.D.N.Y. Oct.24, 2002). Here, Plaintiff has already submitted one Amended Complaint, and the flaws in that Amended Complaint are substantive in nature such that better pleading would not cure them. As a result, it would be futile to afford Plaintiff an additional opportunity to amend his pleading.


**V. CONCLUSION**

 **\*4**  Accordingly, it is hereby:

**ORDERED,** that Defendant's Motion (Dkt. No. 35) to dismiss Plaintiff's Amended Complaint is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Amended Complaint (Dkt. No. 8) is **DISMISSED** without prejudice; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**


**All Citations**

Not Reported in F.Supp.2d, 2012 WL 967059

---

End of Document                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.